# New York Tartar Company *v.* French et al., Appellant.

154    273
e 30 SC ³571

[Marked to be reported.]

*Gratuitous mandatory—Misfeasance—Non-feasance.*

At common law a gratuitous mandatory is liable in all cases of misfeasance, but not in any case of non-feasance.

The reason for the distinction is that when the mandatory begins to act he gives undeniable evidence that he considers himself bound, and this may induce the mandant to neglect acting for himself; but where he only promises to act, there being no consideration, it is a mere nudum pactum, a promise without consideration, which imposes no legal liability.

*Duty to insure—Course of dealing.*

At common law a merchant is bound to insure for his correspondent, if, from the course of dealing between them, the one has been accustomed to send orders for insurance, and the other to obey them.

*Contract—Negligence—Failure to insure—Construction of contract by course of dealing.*

Plaintiff agreed to deliver cream tartar to defendants " as wanted " within a certain time. By another contract plaintiff agreed to deliver to defendants an additional quantity of cream tartar, all to be taken within three months from date, and in three monthly installments. In each sale the price was f. o. b. Nothing was said about insurance in the contracts. Subsequent correspondence between the parties showed that it was understood that defendants were to designate the mode of carriage as well as the carrier. Defendants directed that the goods should be carried by water, and designated the vessel and the voyage. In their first order they direct-

ed plaintiff to insure, and this was done. In the second order was said about insurance, and plaintiffs did not insure. In the third order they directed plaintiffs to insure, and this was done. In the fourth order they directed plaintiffs to insure, but plaintiffs neglected it for twenty-five days, and when they attempted to do so, found that they could not, because the vessel had gone ashore: *Held*, that plaintiffs could not recover from defendants the price of the goods. The course of dealing here shows that plaintiff was to insure whenever ordered by defendants and was not to insure unless ordered. This inference is not a custom of merchants reading into the contract a trade obligation, but the interpretation of the contract which the parties themselves, by their conduct, put upon it.

Argued March 28, 1893. Appeal, No. 289, Jan. T., 1893, by defendants, Harry B. French et al., from judgment of C. P. No. 2, Phila. Co., March T., 1890, No. 121, on case tried by court without jury. Before STERRETT, C. J., GREEN, MC-COLLUM, MITCHELL and DEAN, JJ.

Assumpsit for goods sold and delivered.

The case was tried by the court, PENNYPACKER, J., without a jury, under the act of April 22, 1874. The facts as found by the court are quoted in the opinion of the Supreme Court. Reported below in 1 Dist. R. 601.

Exceptions to the opinion and finding of the trial judge were as follows:

" 1. It should have been held that the contract of sale was executory in this : That there was to be no delivery to the defendants excepting as the goods should be shipped according to their order, and there being no delivery according to such order, the title to the goods did not pass to the defendants, and an action for goods sold and delivered will not lie for want of a delivery. [1]

" 2. That whilst the defendants ordered the goods to be shipped by the steamer ' Commonwealth,' they ingrafted into their order a direction that the plaintiff should have the goods insured, and it should have been held that the intent of such order was that the goods were not to be shipped and delivered to the defendants without first having them insured. [2]

" 3. The parties were merchants, the plaintiff doing business in the city of New York and the defendants doing business in the city of Philadelphia, and the plaintiff had been intrusted by the defendants with the business of shipping the goods which

had been ordered by the defendants from the plaintiff, and from the course of dealing between the parties the defendants had been used by correspondence to send with their orders for shipment, also orders for the plaintiff to insure goods ordered by the defendants, which orders to insure the plaintiff had always obeyed and attended to, and therefore it should have been held that the plaintiff was bound to obey the defendants' order to insure in this case. [3]

" 4. Because the learned judge erred in stating that the two occasions upon which the plaintiff complied with the request of the defendants to have the goods insured, taken in connection with the two occasions in which they were sent without insurance, are insufficient to establish such a course of dealing between the parties as would make it obligatory upon the plaintiff to provide for having the goods insured, and in not holding that as the plaintiff had insured when requested, and had not refused whenever so requested, that the defendants had the right to infer that their orders to insure would be complied with. [4]

" 5. In not holding that the relationship of the parties was such that the plaintiff was bound to inform the defendant of its neglect, refusal, or inability to insure, so that the defendants might have an opportunity to insure by other means than through the plaintiff, and thus not to cause the defendants loss by throwing them off their guard. [5]

" 6. In not finding that there was a duty of the plaintiff to insure by implication without the necessity of showing an express contract to insure or any specific consideration for the purpose. [6]

" 7. In holding that the plaintiff was not liable for nonfeasance. [7]

" 8. In not holding that the loss to the defendants by the neglect of the plaintiff in not insuring would be the whole value or price of the goods, and the defendants would have the right to set off or recoup these damages against the plaintiffs' claim for goods sold and delivered. [8]

" 9. In not finding that the plaintiff had partly performed the order to ship and insure, and that it was bound to go on and fully perform the order by insuring. [9]

" 12. The defendants except because the learned judge erred

in finding for the plaintiff and entering judgment in his favor for the sum of $3,707.88." [10]

The exceptions were dismissed.

*Errors assigned* were (1–10) dismissal of exceptions, quoting them; and (11) in confirming the opinion and judgment of the trial judge.

*Richard P. White, Joseph P. McCullen* with him, for appellant.

Plaintiff having undertaken to perform and having performed in part, was bound to perform in whole and to perform without negligence : French v. Reed & Forde, 6 Bin. 308 ; Thorne v. Deas, 4 Johns. 84 ; Frauenthal v. Derr, 13 W. N. 485 ; Webster v. De Tastet, 7 T. R. 157 ; Smith v. Lascelles, 2 D. & E. 188.

If it has been the usage between the parties in former dealings for the vendor to insure in any particular case he is bound to insure : Parsons on Contracts, 6th ed. § 534 ; Story on Agency, § 190.

Plaintiff was the agent of defendants for the purpose of shipping, for it has been well settled that as delivery to a common carrier designated by the purchaser is a delivery to the purchaser himself, the carrier being regarded as the bailee of the person to whom, and not by whom, the goods are sent, so the latter when employing the carrier must be regarded as the agent of the former for that purpose : Benjamin on Sales, 4th ed. 807, § 693 ; Clark v. Bank, 17 Pa. 322 ; Story on Agency, § 190.

Plaintiff here was guilty of a misfeasance, because they performed the shipping directions with gross negligence when it neglected the material part of insuring : Story on Agency, § 190 ; Crosbie v. McDoual, 13 Ves. Jr. 147.

The claim in this case is to recover for goods sold and alleged to have been delivered, but as the contract was to ship as ordered there could be no delivery to defendant unless the shipment was made as ordered, and this was not done, because the order given was to " ship insured," and the goods were not shipped insured: Tiedeman on Sales, § 95 ; Chalmers on Sale of Goods, page 51 ; Wheelhouse v. Parr (Mass.), 6 N. E. R. 787 ; Clarke v. Hutchins, 14 East, 475.

This being an equitable defence growing out of the contract

itself and going directly to its consideration, defendant's right to recoup is clearly settled by ample authority: Glennon v. Mfg. Co., 140 Pa. 594; Leech v. Baldwin, 5 W. 446; Heck v. Shener, 4 S. & R. 249; Nickle v. Baldwin, 4 W. & S. 290; Shoup v. Shoup, 15 Pa. 361; Wright v. Cumpsty, 41 Pa. 102; Hunt v. Gilmore, 59 Pa. 450; Hatchett v. Gibson, 13 Ala. 587.

*John G. Johnson, Frank P. Prichard* with him, for appellee. —The failure to perform a promise for which no consideration is paid, and which is a purely voluntary undertaking, is not ground for an action: Thorne v. Deas, 4 Johns. 84; Frauenthal v. Derr, 13 W. N. 485.

There was no other relation between the parties than that of vendor and vendee. The contracts were in writing, and they show no other relation. It is conceded that there was no previous custom of trade or usage which could write into the contracts any other terms than those expressed. The vendors were bound to deliver in New York to the vendees' carrier, and that was the extent of their duty. It was not a duty as agent, nor was there any confidential relationship.

The vendees had no right to impose any condition. They were bound to take a certain quantity per month. The end of the month had arrived. Under their contract it was their duty to name their carrier. The vendees had no right to annex to their order for shipment a condition that the vendors should do something else which the latter were under no obligation to do.

There was in fact no conditional order. The evidence is directly the contrary. The vendees at the expiration of the time fixed for delivery selected their carrier. Cotemporaneously with their notification to the vendors of that selection, they requested the vendors to order insurance on their account. They did not say that this was a condition of shipment, nor was this to be implied.

An examination of the cases cited by the appellants will show that they are not in conflict with the principle upon which this case was decided by the court below. French v. Ford, 6 Bin. 308, was a case of a factor who was specifically employed to procure insurance for two voyages, and took out a policy only covering one voyage.

OPINION BY MR. JUSTICE DEAN, April 17, 1893 :

This case was tried by the court without a jury under the act of April 22, 1874. The material facts, as found by the trial judge, are very clearly stated in his opinion, which we quote :

The plaintiff, a manufacturer of chemicals in the city of New York, and the defendants, a firm dealing in drugs and chemicals, doing business in the city of Philadelphia, entered into three written contracts for the sale by the plaintiff to the defendants of cream of tartar and tartaric acid. The first of these contracts, dated January 11, 1889, was a sale of " 20 casks of their cream tartar crystals f. o. b. New York at 25 cents per pound, cash 30 ds. or 1 p. c. off 10 days, deliverable as wanted within six months from date, and with protection at time of shipment."

The second contract, dated July 15, 1889, provided for the sale of " ten (10) casks of their Xtal Cr. Tartar, f. o. b. New York, less 1 p. c. brokerage, at twenty-three (23) cents per pound, cash 30 ds. net, or 1 p. c. cash 10 days. Deliverable during the balance of the year as wanted. Not more than five casks per month, with protection against further decline in price."

The third contract was in the form of a letter written by the plaintiff and accepted by the defendants, dated November 1, 1889, in which was set forth : " We hereby confirm sale to you of six thousand (6000) pounds tart; acid at 30 c., Xtal B. size at 31 c. pound, 30 ds. net, or less 1 p. c. for payment within 10 ds., f. o. b. New York, 1 p. c. brokerage. All to be taken within three (3) months from above date, and in three monthly installments of equal size. Should our price be lower at the time of any delivery, such delivery to be charged at the reduced price."

Prior to December 1, 1889, there had been four deliveries under the terms of these contracts. At the request of the defendants these deliveries were made by the plaintiff on board the steamer " Commonwealth " in New York. In the case of two of the shipments the plaintiff, at the request of defendants, had procured the goods to be insured by the owners of the " Commonwealth " against losses by perils of the sea. In the cases of the other two shipments there was no such request, and the goods were not insured.

On December 4, 1889, the plaintiff wrote to the defendants,

designating the goods still undelivered and saying: "Please favor us with dates and route of shipment, our December engagements being very heavy." The defendants replied December 5th as follows: "Such of the goods as are due us, on which we pay freight, please ship by the last trip that the steamer 'Commonwealth' makes this month, and insure the same with them, which they will do at 1-8 p. c."

On December 28th, the plaintiff delivered on board the "Commonwealth" eight casks of cream tartar and six barrels of tartaric acid, of the value of $2,762.17, without having secured the insurance as requested by the defendants. The "Commonwealth" foundered in the course of the voyage, and the goods were not received by the defendants. The plaintiff wrote to the defendants December 30th, saying: "Shipped Saturday on steamer 'Commonwealth' eight casks cream and sixteen bbls. tartaric acid, value $3,800, but on sending to agents this morning for bills lading with your letter ordering insurance they declined to insure because vessel ashore. Please see what you can do at your end."

On these facts plaintiff based its right to recover from defendants the contract price of the eight casks of cream tartar and six barrels of tartaric acid, $2,762.17, delivered on board the "Commonwealth" December 28, 1889, which by reason of the foundering of the vessel were not received by defendants. Under the settled rule, that a delivery to the common carrier designated by the purchaser is a delivery to him, if nothing further appeared, the plaintiff had a right to recover. But the defendants deny plaintiff's right to judgment, alleging that the fair construction of the contracts was, that plaintiff was to deliver the goods on board the vessel as ordered, and as the order of December 4, 1889, under which this shipment was made, also directed insurance, which plaintiff did not effect, and did not notify defendants of a refusal to insure, therefore there was no delivery under the contract.

The learned judge of the court below who tried the cause, in his ascertainment of the law applicable to the facts, is of opinion that the silence of plaintiff for more than twenty days after the receipt of the order of December the 4th, and the neglect to insure, would, perhaps, in good morals warrant the imposition of the loss on it, and that the rule of the civil law, which is

" in accord with the principles of justice and fairness," would so decide, if it could be invoked in a common law court by defendants to relieve them from liability. But he holds that, as to insurance, plaintiff was a mere mandatory without compensation, who wholly neglected to comply with the mandate; that in such case the rule of the common law is different from that of the civil law, and however meritorious may be the defence in morals, it is not sufficient in law, and judgment is accordingly entered for plaintiff.

Undoubtedly, the rule of the common law is as stated; a distinction is drawn between the misfeasance and nonfeasance of a mere mandatory, one not owing the duty of performance, and with whom it is wholly gratuitous.

The distinction is, that if such an one undertakes to carry out the order, and does it so negligently that damage results, he is liable; if he do not undertake to carry it out at all, he is not liable. The reason is, that when the mandatory begins to act he gives undeniable evidence that he considers himself bound, and thus may induce the mandant to neglect acting for himself; but where he only promises to act, and does not act, there being no consideration, it is a mere nudum pactum, a promise without consideration, which imposes no legal liability.

So far as concerns the distinction, the rule is not always satisfactory, obviously, because, if the reason on which it is founded be made the test of its application, it will reach many cases of nonfeasance as well as all cases of misfeasance. The reason for the rule consists wholly of a moral obligation; that is, he who has misled another to his hurt should make good the loss. Seemingly, therefore, wherever, from the facts, the obligation exists, the mandatory should be held liable; but the common law stops short of this, and declares, the reason for the rule being present in all cases of misfeasance, the rule shall apply, but not being present in all cases of nonfeasance, it shall not apply to any.

The result has not seldom been efforts on part of courts, when the reason, in a case of nonfeasance, seemed to demand a disregard of the distinction, to apply the rule as if the case were one of misfeasance. Hence, apparently contradictory decisions of courts, and difference of opinion between such eminent law writers as Sir William Jones and Judge HARE. The first, in

his Law of Bailments, says that anyone might refuse to accept a commission, but if he agreed to execute it it must be fulfilled, or the person who gave it notified in time to enable him to look for another agent. Judge HARE, in his work on Contracts, thinks this doctrine is wholly one of the civil law, and has no authority for it in the common law. He adopts to the full extent the rule of the common law as laid down by Chancellor KENT in Thorne v. Deas, 4 Johns. 84, the case cited and relied on by the appellee here. In that case Thorne and another, plaintiffs, owned one half a brig; Deas, the defendant, owned the other half. On the day the vessel sailed from New York for West Indies, Thorne, who was going on board, asked Deas to insure her. Deas promised he would do so at once, but did not do so. Ten days afterwards the other owner, on discovering it, said to Deas if he did not at once take out a policy he would do so himself. Deas told him to make himself easy, that he would insure the vessel that very day. He did not do so, and the vessel was lost. Thorne and his co-owner of the one moiety, brought suit against Deas to recover damages for his neglect. Chancellor KENT, in deciding the case, held that Deas's neglect was only a case of nonfeasance; that what he promised to do was purely voluntary and gratuitous, and there could be no recovery, and says: "There is, then, no just reason to infer from the ancient authorities that such a promise as the one before us is good without showing a consideration." Thorne v. Deas, since the judgment rendered in it, has been cited as ruling this class of cases; it has come down to us with all the weight of authority attached to the name of the eminent lawyer who promulgated it.

Occasionally doubted, because it is not clear that even the facts of that case show a want of consideration, still the rule has generally been followed by American courts. We are not inclined to dispute it, for, while it may not wholly commend itself to approval, nevertheless, that stability of the law, which comes from adherence to a settled rule, ought not to be shaken, merely because either conscience or reason, quickened by the hardship of a particular case, suggests a departure. The only question here then is, does Thorne v. Deas rule this case? The learned judge of the court below thought it did; we are of a different opinion. It is conceded, in that case, as well as in the

ancient authorities on which it is grounded, that even at common law a merchant was bound to insure for his correspondent, if, from the course of dealing between them, the one has been used to send orders for insurance and the other to obey them. Assume, that this is a case not strictly within the law merchant, and that there is no custom of merchants affecting the rights and liabilities of the parties ; that it is a case growing out of a contract between the vendor of goods in New York and the purchaser of goods in Philadelphia, and that their rights and liabilities are to be determined wholly by their contract. Then, the case turns on a reasonable interpretation of the contract.

The first contract, January 11, 1889, was for 20 casks of cream tartar, deliverable as wanted within six months· from date. The second contract, July 15, 1889, was for 10 casks, deliverable during balance of year as wanted. The third contract, November 1, 1889, was for 6000 pounds, all to be taken within three months from date and in three monthly installments. In each sale the price was f. o. b., that is, free on board, a trade term as fixed in its signification as the C. O. D., with which most persons are familiar. The first two contracts expressly provide that deliveries are to be made as wanted by the purchasers. The third one stipulates the 6000 pounds are to be taken within three months in three monthly installments of equal size ; this, of course, was 2000 pounds monthly, but date of shipment within each month to be designated by purchaser. From the extreme brevity of these contracts, certain things not in them yet within the contemplation of the parties, necessarily, were to form the subject of future decision. The mode of shipment, whether by water or railroad, was not named ; nothing was said about insurance, if by water. The subsequent correspondence shows, it was understood the purchasers were to designate the mode of carriage as well as the carrier. Do the contracts themselves and the subsequent conduct of the parties warrant the inference that the consignor was bound to insure the shipment of the 28th of December, not received because of foundering of vessel? The court below says : " The two occasions upon which the plaintiff complied with the request of the defendants to have the goods insured, taken in connection with the two occasions in which they were sent without insurance, are insufficient to establish such a course of

dealing between the parties as would make it obligatory upon the plaintiff to provide for having the goods insured." To our minds the inference from all the facts is the other way.

The point of shipment was New York; the defendants under the contract designated not only the quantity of goods shipped from time to time, but also that they were to be carried by water, by what vessel and the voyage. The course of dealing between the parties warrants, undeniably, that plaintiff was bound to do just what it did do in these particulars. As to course of dealing with reference to insurance, in order for shipment July 18th, they say, " insure," and plaintiff did insure. In order of August 17th, they say nothing about insurance, and plaintiffs did not insure. In order of November 12th, they say " insure," and plaintiff did insure. Then comes the order of December 5th, saying " insure," and plaintiff in twenty days thereafter made the shipment, but did not insure, and did not notify defendants that they would not do so, but did notify them of an ineffectual attempt to obey the order when too late. The course of dealing here shows that plaintiff was to insure whenever ordered by defendants, and was not to insure unless ordered.

This inference is not a custom of merchants reading into a contract a trade obligation, but the interpretation of this contract, which the parties themselves by their conduct put upon it. The very fact that plaintiff did not insure the order of the 17th of August, instead of showing the absence of obligation on the order in dispute, shows the reverse; for that order did not direct insurance, therefore none was taken ; if plaintiff had disregarded either the order of July 18th, to insure, or that of November 12th, to same effect, that would have been a fact of some significance, as tending to show, effecting insurance was wholly gratuitous on its part.

Nor is there anything in the evidence subsequent to the loss, which tends to rebut this inference. In plaintiff's telegram of the 30th of December, they say the agents declined to insure because " vessel ashore. Please see what you can do at your end." It is somewhat difficult to understand just what plaintiff expected in way of honest insurance at this " end, " with the vessel ashore at that " end." The defendants, too, in their reply do not seem to have thought it incapable of accomplish-

ment because of the fact that the vessel was already wrecked, but because it was known to be; for they say as it " was published in our papers this morning, it was too late for us to do anything here." But whatever reflections this correspondence may cause as to the course of dealing between merchants and underwriters, it shows that, up to the wreck of the vessel, plaintiff acted as if bound to insure according to the order.

Thorne v. Deas did not turn upon the interpretation of a contract between the vendor and purchaser of goods to be shipped as " wanted." It was the promise of one owner of part of a vessel to his co-owners to have her insured; and it was held there could be no recovery because the promise was wholly without consideration. Here, insurance when ordered, under the interpretation put by the parties upon their contract, was as binding as any other part of it, and there is an adequate consideration. Frauenthal v. Derr, 13 W. N. 485, also cited by appellee, was between a property owner and a fire insurance agent; it was a simple neglected promise on part of agent to renew insurance for the house owner; there was no consideration. On the undisputed facts it was declared to be only a case of nonfeasance and that there could be no recovery.

Counsel for appellant " merely ask that defendants be not made to pay for that which they never received." We decide, they ought not to pay the $2,762.17, value of goods shipped December 28, 1889, on board the " Commonwealth." But there is due plaintiff from defendants a balance of $509.81 for goods sold and delivered in January, 1890. For this they ought to recover. Therefore the judgment of the court below is reversed, and it is ordered that judgment for plaintiff for sum of $509.81, with interest from January 20, 1890, be entered.