## In re Estate of Elias Miller, deceased. Appeal of Benjamin Hauck.

*Decedents' estates—Book entries—Evidence.*

A claimant against a decedent's estate showed an account kept in the form of a ledger account, running for twenty years, and ending one year before decedent's death, and showing nothing due the claimant. Further along in the same book was an account, the last entry of which was of a date ten years before decedent's death. The latter account did not exhibit the sale and delivery of any goods or property, but merely lump charges, and it showed a balance due the claimant of over $1,200. There was no evidence to explain the entries, nor to explain the delay in payment. The deceased was of ample means, while the claimant was in need; yet he had been paying the deceased cash for goods sold and delivered to himself. *Held*, that the claim should be disallowed.

Argued Feb. 15, 1898. Appeal, No. 392, Jan. T., 1897, by Benjamin Hauck, from decree of O. C. Schuylkill Co., March T., 1897, No. 15, overruling exceptions to adjudication. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Exceptions to adjudication.

The facts appear by the portion of the opinion of DUNN, P. J., which relates to this matter, as follows:

Claim of Henry Breisch, now to the use of Benjamin Hauck, on a book account for a balance of $1,297.62.

The payment of this claim was objected to by the representatives of the estate, on the grounds that it is not a debt of the estate, and that the claim is barred by the statute of limitations.

An examination of the account book of claimant shows an

account against Elias Miller, the decedent, on page 114 in ledger form. The debit side shows the specific charges made, and the credit side the specific credits on demands to which the claimant is entitled. On the same page we find the following entry:

Mar. 19 Settled in full
        Balance  .   .   .   .   .   .    $71 98
        Transferred to page 172

On page 115 the credit side, we find the following entry:

1875
Mar. 19.   Settled in full
        Balanced.

Turning to page 172, we find the account continued, the first entry on the debit side being:

1875
March 19 To carried from page 114,   .   .   $71 98

The credits on this page claimed including the $71.98 carried from page 114 amount to $291.01.

On page 173, the credits amount to $177.02.

At this point the account is not balanced. The entry made that it is transferred to page 312. Turning to page 312, we find the debit side continued, having entries made in 1878, 1879, 1881, 1882, one entry in 1883, and no other entry until September, 1895.

To 14 Bu Rye 50c  .   .   .   .   .   .    $7 00

On the credit side page 313, we find five entries in 1878, one in 1879, one in 1886, one in 1890, and the following on December 7, 1895.

To by 4150 shingles $2.75 per M.  .   .   .   $11 41
To by 16 Bu Wheat 70c   .   .   .   .   .   11 20

The amount of debits on page 312 is $383.82, and the amount of credits on page 313 is $405.63. These pages of claimant's book account show that the claimant is indebted to the decedent in the sum of $16.80.

But it is claimed on behalf of the claimant that there is one

account against Elias Miller, the decedent, on page 455, continued on page 450, commencing November 30, 1876, and ending May 31, 1877, which belongs in between the dates found in the account which ends on page 312.

Turning to page 455 the last page all but one of this account book, we find the following account:

ELIAS MILLER.

| | | | | |
|---|---|---|---|---|
| Nov. 30 | To Henry Williams . . | $ 40 91 | | |
| " " | " Viggans . . . . | 274 71 | | |
| Dec. 30 | To " paid . . | $362 63 | | |
| " " | To H. Williams . . . | 83 .72 | | |
| " " | " No. 3 Lehigh Colliery . . | 43 75 | | |
| 1876. | | | | |
| Jan. 31 | To Gilberton . . . . | 179 91 | | |
| " " | " Viggans . . . . | 122 18 | $248 43 | |
| | | | 83 32 | |
| | | | $165 11 | |
| Feby 29 | To Gilberton . . . . | 176 50 | | |
| " " | " Viggans . . . . | 6 97 | | |
| Mar. 27 | " Gilberton . . . . | 432 87 | | |
| " " | " West Lehigh . . . | 54 70 | | |
| " " | " Viggans . . . . | 39 62 | | |
| April | " Cash . . . . . | 50 00 | | |
| | | 925 77 | | |
| April 26 | By a note for . . . . | 526 62 | | |
| | | 399 15 | | |
| | | 190 00 | | |
| | | 209 15 | | |
| June 29 | To West Lehigh . . . | 39 44 | | |
| " " | " Viggans . . . . | 71 48 | | |
| " " | " Gilberton . . . . | 183 84 | | |
| May 31 | " Adkins . . . . | 48 90 | | |
| " " | " Viggans . . . . | 13 80 | | |
| " " | " Gilberton . . . . | 171 36 | | |
| June 2 | " Cash . . . . . | 60 00 | | |
| | | $797 97 | | |
| June 26 | By cash . . . . | 350 00 | | |
| | | $447 97 | | |

This a copy of the account purporting to be against Elias Miller on page 455. Turning from this account to page 450, we find an account purporting to be against Elias Miller, with a debit and a credit side. There does not appear to be any connection between this account and the account on page 455, except, that at the head of the column on the debit side the figures "$447.97" are entered in pencil, and the name of Elias Miller is written at the head of the account.

A copy of the debit side of this account on page 450 is as follows:

1876.

| | | | | |
|---|---|---|---|---|
| June 30 | To 164 Sills to Viggans | . | . | 32 80 |
| " " | " Cash | . . . | . | 50 00 |
| July 31 | " Gilberton for | . | . . | 132 31 |
| Aug. 31 | " Gilberton for | . | . . | 48 67 |
| " " | " Viggans for | . | . . | 22 72 |
| Sep. 30 | " Viggans for | . | . . | 54 80 |
| " " | " Gilberton for | . | . . | 43 40 |
| Oct. 31 | " Gilberton for | . | . . | 51 20 |
| " " | " Viggans | . . | . . | 71 61 |
| Dec. 0 | " Load of hay at No. 3 colliery | | | 31 70 |
| 1877 | | | | |
| Jan. 31 | " Gilberton | . | . . | 81 11 |
| Feby 28 | " Gilberton | . . | . . | 73 46 |
| " " | " Viggans | . . | . . | 794 49 |
| Mar. 28 | " Bill of M. Peter | | . . | 26 42 |
| " 31 | " Viggans | . . | . . | 165 06 |
| " " | " Gilberton 144 oak l. m. | | . | 36 30 |
| April 30 | " Viggans | . . | . . | 169 95 |
| " " | " Gilberton | . . | . . | 90 82 |
| May 31 | " Gilberton | . | . . | 26 21 |
| " " | " Viggans | . . | . . | 62 57 |

A copy of the credit side of this account on page 451 is as follows:

1876

| | | | | |
|---|---|---|---|---|
| Aug. 23 | To Cash | . . . | . | $132 31 |
| Sep. 25 | " Cash paid W. Hammer | | . | 67 99 |
| Nov. 24 | " Cash of Viggans for Oct. | | . . | 58 77 |
| " " | " Balance of " " " | | . | 12 84 |

| | | | |
|---|---|---|---|
| Nov. 24 To Cash of Gilberton . . | 51 | 20 |
| Dec. 24 By Cash . . . . . | 70 | 00 |
| 1877 . | | |
| Feby 24 By Cash . . . . | 81 | 11 |
| Mar. 11 By Cash . . . . . | 267 | 95 |
| Apr. 26 By Cash . . . . | 10 | 00 |
| May 2 By Check . . . . | 165 | 00 |
| " 29 By Cash . . . . | 169 | 95 |
| " By Check by H. Williams . | 39 | 79 |
| June 26 By " " " " . . | 77 | 24 |

An examination of the account on pages 455 and 450 shows no connection with the account ending on page 312. They are separated by all these pages, upon nearly every page of which we find an account with other persons with whom Henry Breisch had dealings and an examination of these numerous accounts, shows that they are all of a date subsequent to the date of the account against Elias Miller on pages 455 and 450.

Robert Breisch, the son of Henry Breisch, was called as a witness to explain this system of accounts. He was bookkeeper for his father for about twenty-four years. After testifying to the account ending on pages 312 of the account book, he was asked:

"Will you state to the court whether at the same time you kept in another portion of your book an account devoted to the timber business or transactions of Breisch and Miller? A. Yes, sir; on page 455."

He testified that the items of debit in this account were for timber or sawed lumber hauled to the mines for Elias Miller; that Elias Miller had a contract with certain collieries among which were Gilberton and Wiggans, for the sale and delivery of timber, and that Henry Breisch furnished the lumber upon a contract with Miller. He says this account was kept separate to know the amount of timber hauled in. He says that when the timber was delivered at the several collieries for Miller, entry was made of the quantity and character of the timber, in small books and from them, the lumping charges were made out and entered in this account.

An examination of the account against Elias Miller, which ends on page 312, shows that on page 114 during 1872, charges

of lumber were entered against Miller, and on June 19, 1873, an entry is made of one load of plank hauled to Gilberton colliery.   On page 172 of the same account, during 1874, numerous items of timber delivered at the Gilberton colliery were charged up to Miller.   On page 312 during 1878, 1879 and 1882 various items of lumber were charged against Elias Miller. The evidence shows that on January 9, 1890, Breisch settled an account which Miller had against him by a cash payment of $44.57.   The books of original entries of Elias Miller having every indication of being the record of his daily transactions with other persons, as well as the record of the mutual account between himself and Breisch, show no entry of the two items of credit entered by Breisch in his book to the credit of Miller, on December 7, 1895.

From this evidence, we find the following facts :

1. The account between Henry Breisch and Elias Miller ending on pages 312 and 313, presented by claimant, is an unsettled account of their mutual dealings from May 1, 1875, to December 7, 1895, and by this account nothing is due claimant.

2. The account beginning on page 455 and ending on pages 450 and 451 begins November 30 and ends June 26, 1876.   It is a separate and distinct account of an entirely different character. It does not exhibit the sale and delivery of any goods or property by Miller to Breisch.

3. The last item of this on either side is June, 1876 ; that nothing had been done by the decedent, by way of promise, acknowledgment or payment on this account within six years prior to his death which would toll the bar of the statute of limitations.

Reference to a few authorities may be well, before making final disposition of this claim.   In Mueller's Estate, 159 Pa. 590, it is said that "claims against decedents which might have been made against himself while living are always subject to just suspicion."   The evidence offered in support of this claim discloses very just grounds for suspicion.   It is a very stale claim.   There appears no reason whatever for such delay.   The decedent was of ample means, and Henry Breisch was in need of every cent due him, and while so in need, instead of insisting on payments on account, or credits on account, he was paying Miller in cash for goods sold and delivered to him by Mil-

ler.  In the case of Wilson v. Wilson, 6 N. J. Law, 95, cited with approval by Mr. Justice MITCHELL, in Fulton's Est., 178 Pa. 86, it is said, "A book of daily entries containing accounts with different people touching matters in which a man is known to deal or be employed, and which according to the custom of the country are usually made matter of account, has been admitted as evidence for the jury under all the circumstances of the case, while a detached paper, which might have been made up for the occasion, has been wholly rejected. . . . Now these last entries appear to me to be no part of the book, properly speaking, but to stand precisely in the situation of a detached paper, and to derive no credit at all from their being written within the cover of the book, seeing they are written upon pages wholly detached from the daily entries and accounts."

It is contended on behalf of claimant that Henry Breisch being a farmer, unacquainted with any better method for keeping his accounts, should not suffer because they were kept in this unusual way.  But it is plain he must have known better how to keep such accounts, for during 1872, 1873, 1874, 1878, 1879 and 1882, numerous items of lumber charges were entered by him against Miller, in the usual and proper way,—not in lump charges as these are in a separate part from the regular entries of their mutual dealings.

The claim is disallowed.

*Error assigned* was in overruling exceptions to adjudication.

*E. A. Beddall*, for appellant.—In an action upon a book account of a decedent it is only necessary to prove that they are books of original entry to admit them to go to the jury as evidence; and if evidence be afterwards given as to the time when the entries were made, this must be referred, with the books, to the jury: Odell v. Culbert, 9 W. & S. 66 ; Curren v. Crawford, 4 S. & R. 2; Keim v. Rush, 5 W. & S. 377.

The distributing judge was the auditor and his findings of fact—especially where, as in this case, he is completely at variance with the testimony—are reviewable by the Supreme Court: Selser's Estate, 8 Pa. C. C. R. 254; McConnell's App., 97 Pa. 31 ; Chambers v. Marks, 25 Pa. 296.

A farmer's account is within the rule of mutual accounts of

merchants: Trickett on Law of Limitations in Pennsylvania, sec. 263.

Our book of original entries is kept in ledger form. But this is no objection: Hoover v. Gehr, 62 Pa. 136; Thomson v. Hopper, 1 W. & S. 468; Ingraham v. Bockius, 9 S. & R. 285; Kaughley v. Brewer, 16 S. & R. 285; Jones v. Long, 3 Watts, 325.

The evidence having established a mutual continuous running account, with the last item within six years, the claim should have been allowed: Van Swearingen v. Harris, 1 W. & S. 356; McFarland v. O'Neil, 155 Pa. 260; Chambers v. Marks, 25 Pa. 296; Trickett on the Law of Limitations in Penna., sec. 263.

*S. G. M. Hollopeter*, for appellee.—Claims against a dead man's estate which might have been made against himself while living are always subject to just suspicion: Mueller's Est., 159 Pa. 590.

Entries made in a ledger from a pass book or blotter, by different parties, days and weeks after they had been entered in the pass book or blotter, does not make the ledger a book of original entries: Patterson v. Woolen Mfg. Co., 2 Woodward, 216; Walter v. Bollman, 8 Watts, 544; Hamill v. O'Donnell, 2 Miles, 101; Breinig v. Meitzler, 23 Pa. 156; Funk v. Ely, 45 Pa. 444; Wall v. Dovey, 60 Pa. 212; Corr v. Sellers, 100 Pa. 169.

When the regular account against a decedent is entered in the fore part of the book, with ample space for continuing same, entries made at the end of same book without any reference to the former account, are treated as a detached paper and not admissible: Fulton's Est., 178 Pa. 86.

PER CURIAM, October 31, 1898:

It is impossible to sustain the entries upon which the appellant relies as valid book entries in any point of view, nor was any testimony given, or offered, which could supply the deficiencies of the entries. The opinion of the auditing judge is a complete vindication of his rulings and on that the decree is affirmed.

Decree affirmed and appeal dismissed at the cost of the appellant.