## Moore, Receiver, Appellant, *v.* Rohrbacker.

*Insurance—Fire insurance—Mutual fire insurance—Assessments—Books—Evidence.*

In an action by the receiver of a mutual fire insurance company to recover assessments on a policy, the assessment book of the company is admissible in evidence where it is shown to be a book of original entries containing the record of the policy in suit along with all others issued. In such a case the book is admissible not only as a book of original entries, but also as a record of a company of which the defendant was a member.

In an action by the receiver of an insolvent mutual fire insurance company against a member to recover assessments, the plaintiff may show evidence of previous assessments laid by the company on the policy of the defendant and paid by him without objection. In such a case the evidence is competent as showing the course of dealing between the parties to the contract indicative of its true intent and meaning as construed by themselves.

Argued Jan. 12, 1906. Appeal No. 53, Jan. T., 1906, by plaintiff, from order of C. P. Wayne Co., Dec. T., 1902, No. 7, refusing to take off nonsuit in case of Elmer W. Moore, Receiver of the Iron City Mutual Fire Insurance Company of Pittsburg, v. Lewis Rohrbacker. Before RICE, P. J., PORTER, MORRISON, HENDERSON, ORLADY, BEAVER and HEAD, JJ. Reversed.

Assumpsit to recover assessments on a policy of mutual fire insurance. Before PURDY, P. J.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were refusal to take off nonsuit, and various rulings on evidence referred to the opinion of the Superior Court.

*H. W. Mumford,* for appellant.—Books of a corporation are admissible in evidence to prove amount of installments as well as the calls: Bavington v. Railroad Co., 34 Pa. 358; Comfort v. Leland, 3 Wharton, 81 ; Bedford Railroad Co. v. Bowser, 48 Pa. 29; Diehl v. Adams County Mut. Ins. Co., 58 Pa. 443.

The defendant, as a member of the company, was charged with knowledge of its books and its affairs, with its manage-

ment, rules and regulations: Mitchell v. Lycoming Mutual Insurance Co., 51 Pa. 402; Hackney v. Allegheny County Mutual Ins. Co., 4 Pa. 185; Dettra v. Kestner, 147 Pa. 566.

*M. E. Simons,* with him *F. P. Kimble* and *A. T. Searle,* for appellee, filed no printed brief.

OPINION BY HEAD, J., April 23, 1906;

On November 29, 1892, the Iron City Mutual Fire Insurance Company of Pittsburg executed and delivered to the appellee a policy of insurance whereby, in consideration of " the stipulations herein named and of an acknowledged liability to assessment," it agreed to indemnify him against loss by fire on property therein described " to an amount not exceeding fifteen hundred dollars " from November 29, 1892, to November·29, 1897. By the acceptance of this policy, which he retained until May 16, 1896, the appellee assumed not only the relation of an " insured " towards the company as " insurer," but became an actual member of the corporation, with a right to vote for the election of officers who were to carry on the corporate affairs and thus to participate in the direction and control of its policy and business.

The policy of insurance provided that " this policy shall be canceled at any time at the request of the insured " and on May 16, 1896, the defendant returned the policy stating he had canceled it.

To No. 722, September Term, 1895 of the court of common pleas of Lackawanna county a large judgment was entered against the insurance company and upon it an execution was issued but the sheriff was unable to make the money and, proceedings having been instituted in the Dauphin county court, the corporation, on October 19, 1897, was adjudged insolvent and the present plaintiff was appointed a receiver. On October, 27, 1899, a final order was made by the said Dauphin county court directing the receiver to levy an assessment " upon all persons who have held assessable policies " in the said company, " the amount of said assessment to be determined in the following manner : the face amount of each policy shall be multiplied by a number which is as many times one as the basis rate at which such policy was issued and in force, is times one

per cent." The defendant having refused to pay the assessment levied in pursuance of this order the present action was begun to enforce payment. Presumably, of course, the defendant would be called on to contribute only to such losses as occurred while his policy was in force, whatever may have been the length of that period under the facts of the case.

Clearly enough in order to arrive at the amount due from any member, it would be necessary to ascertain " the basis rate at which such policy was issued and in force." For this purpose the plaintiff, on the trial, made a number of offers of evidence, the rejection of which by the court, constitutes the several assignments of error.

The plaintiff having first properly identified the " assessment book " of the company and proven it to be a book containing the record of the policy in suit along with all others issued, offered the book in evidence " for the purpose of showing the record of the company of the issuing of this policy, the time of its return, the assessments paid on it, if any, and the basis rate at which it was issued." The offer was objected to because the book did not furnish the best evidence of the alleged facts sought to be proven. Where the " best evidence " referred to could be found we are not informed by the objection. The ruling of the court rejecting the offer and excluding the book seems to have been based on the limited liability clause attached to that policy. The time for considering to what extent, if at all, that clause would prevent a recovery had not yet arrived, and the existence of the clause afforded no reason for declaring the offer to be irrelevant or inadmissible. Neither did it appear that the evidence was in anywise secondary. The book was declared by the witness to be the book of original entries in which the records of all assessable policies were kept.

The whole method of laying assessments was expressly left, by the by-laws, to the directors, and this book was the evidence of the usual and normal way in which the business was transacted, and unless something to the contrary appeared, the inference that the method shown by the books, as kept in the office and by the employees of the company, was the method sanctioned by the directors, was so plain as to make it impossible to properly reject the evidence of these records. Moreover, the records of the company were admissible in evidence

because the appellee was a member of the company and he, as much as any other member, was responsible for the manner in which its records were kept. In Diehl v. Adams County Mutual Ins. Co., 58 Pa. 443, THOMPSON, C. J., says: " The second assignment was equally well answered. The plaintiff below became a member of the company by the act of being insured in it. It was a mutual insurance company. The books were, therefore, in law, as much his as they were the books and minutes of the other members constituting the company : Conn. v. Woelper, 3 S. & R. 29 ; Hackney v. Ins. Co., 4 Pa. 185." In Mitchell v. Lycoming Mutual Ins. Co., 51 Pa. 402, AGNEW, J., says: " These general principles are made doubly binding upon the assured in this instance by his relation. He becomes a member of the corporation by the act of insurance, and therefore bound to become informed of its rules and regulations." The second assignment is therefore sustained.

By the offer contained in the sixth assignment the plaintiff undertook to show the previous assessments laid by the company on the policy of the appellee and paid by him without objection ; in other words, the course of dealing between the parties to the contract indicative of its true intent and meaning as construed by themselves. Such evidence is always admissible in a contention concerning the proper construction of a contract. It is the function of courts in dealing with contracts to ascertain the things about which the parties intended to agree, the objects on which their minds met, the conclusions to which their wills assented and to construe their contracts so as to effectuate those objects and establish those conclusions.

It ought therefore to be reasonably clear that a series of acts done by the parties to a contract, evincing a common and mutual understanding of the rights of one and the obligations of the other, would be regarded by the law as valuable evidence in the settlement of a dispute that had arisen between them growing out of that contract.

In N. Y. Tartar Co. v. French et al., 154 Pa. 273, Mr. Justice DEAN, speaking of such a course of dealing between parties, says :

" The course of dealing here shows that plaintiff was to insure whenever ordered by defendants, and was not to insure unless so ordered. This inference is not a custom of merchants

reading into a contract a trade obligation, but the interpretation of this contract, which the parties themselves by their conduct put upon it."

In Gas Co. v. Wire Co., 155 Pa. 22, the court say, commenting on a reference by the court below to the course of dealing between the parties, " We do not think this reference objectionable. It was used to illustrate the construction placed upon this contract by the parties themselves; when we are asked to say what the parties meant or intended by their contract, it is entirely safe to point to their own construction of it, as evidenced by their course of dealing under it." The exclusion of this offer was therefore erroneous and the sixth assignment is sustained.

With the admission of the books and any proper and necessary explanation of their contents by the witness who kept or assisted in keeping them, and the course of dealing between the parties, we assume the offers covered by the remaining assignments will become irrelevant. They appear to have been alternative to and substitutes for those already disposed of and no further consideration of them would be profitable.

Judgment reversed and a venire facias de novo awarded.