## Buch & Myers v. Good

*K. L. Shirk* and *Joseph T. Evans,* for plaintiffs.
*Bard & Brown,* for defendant.

SCHAEFFER, J., January 4, 1934.—This is a suit to recover for certain insurance premiums alleged to be due from the defendant to the plaintiffs, based upon a running book account covering a period of about 6 years. As stated by the court in its charge to the jury: "In Pennsylvania, an insurance agent can legally sue for premiums remaining unpaid on policies which were negotiated or sold by the agent to the party sued either by showing that the agent is responsible to the insurance company for those premiums, or by showing that the agent has actually paid to the insurance company the premium for which suit is brought."

The book account in question shows the insurance policies charged against the defendant, the premiums therefor, certain cash credits, credits for unearned premiums, and many credit items for rent. The plaintiffs occupied an office in the building in Ephrata covered by said insurance. The main dispute between the parties is whether the rental for this office was $5 per month or $20 per month for the 6-year period. The jury found in favor of the plaintiffs in the sum of $708.37. The plaintiffs testified as to the entries contained in the ledgers which they called their books of original entry, and under objection by defendant the two ledgers of plaintiffs were admitted in evidence. The court in its charge to the jury said, "It is also your duty to pass upon the correctness of the book account, and to give such weight to it, or any items therein, as you think deserving under the evidence."

The defendant has moved for a new trial and has filed certain assignments of error. The main and controlling question is whether the books referred to were such books of original entry as could be admitted in evidence to establish plaintiffs' case in accordance with their statement of claim. It is contended by defendant that these are not books of original entry; that they contain certain items covering moneys advanced by plaintiffs as insurance agents to the insurance companies for premiums due by defendant; that the books contain numerous credit items for rent, which are in dispute between the parties; and that a lead pencil notation on the books could not be satisfactorily explained by the plaintiffs.

In Hale's Execs. v. Ard's Execs., 48 Pa. 22 (1864), the Supreme Court said: "Books of original entries are evidence to prove a claim for goods sold and services rendered, if made in the regular course of business". This usually includes merchants, shopkeepers, tradesmen, mechanics, and farmers, as stated in Shoemaker v. Kellog, 11 Pa. 310, 311 (1849). The Supreme Court there said, "It would be dangerous to open the door of admission wider than this."

In later years this rule has been extended to meet the changing conditions of

business, and includes labor performed and other services. As stated by Judge Head in Lowenstein v. Greenbaum, 65 Pa. Superior Ct. 19, 22-23 (1916) : "The principles underlying rules of evidence are founded in the common experience of men. Their aim and object are to aid the administration of justice in the courts by the use of means long recognized as helpful in the ascertainment of the truth."

Accordingly, proper books kept by professional persons are generally competent to prove services rendered, although the appellate courts seem not to have directly decided that question. On the other hand, book entries have been referred to as a dangerous kind of evidence at best, because they are merely declarations in the party's own interest, and it has been stated that the rule admitting them would not be extended but would be strictly confined to the necessity which gave rise to it. See Reddelien v. Atkinson, 46 Pa. Superior Ct. 159; Stuckslager v. Neel, 123 Pa. 53, 61; Fulton's Estate, 178 Pa. 78; Miller's Estate, 188 Pa. 214.

No Pennsylvania case can be found directly deciding the main question involved in this instant case. In Horner's Estate, 10 Dist. R. 729 (1901), it was decided that the books of a stockbroker, containing a running account with a customer of the purchases and sales of stock, are not admissible as books of original entry. In Wissahickon Mutual Fire Ins. Co. v. Wannemacher, 15 Pa. Superior Ct. 580, the facts are different from the case at bar, but there it was held, in an action by a receiver of an insurance company against agents of the company for moneys collected on policies entrusted to them, that a book account attached to the statement of claim is properly rejected where it appears that the items of the account, being charges for premiums collected, were not the subject of book entry as recognized by universal usage. In Moore, Receiver, v. Rohrbacker, 30 Pa. Superior Ct. 568, cited by the plaintiffs, an action was brought by the receiver of a mutual fire insurance company to recover assessments on a fire insurance policy. In that case, it was held that the assessment book of the company was admissible in evidence where it was shown to be a book of original entries containing the record of the policy in suit along with all others issued. As explained by the court (pp. 570, 571), these books or records were admissible in evidence because the defendant was a member of the mutual company and therefore responsible for the manner in which the records were kept. The cases relating to policyholders in a mutual insurance company fall within the general rule relating to books of a private corporation, which are generally admissible as to all matters contained therein in proceedings against the corporation, or in all disputes between the corporation and its members, or between the members and those claiming through them, but not as against strangers. See Henry, Pennsylvania Trial Evidence, 119, sec. 93, and cases there cited.

The rent credits under the disputed lease, appearing in the alleged books of original entry, apparently were objectionable items to submit to the jury as integral parts of the book account upon which the plaintiffs base their claim. In Fifth Mutual Building Society of Manayunk v. Holt, 184 Pa. 572, it was decided that one party to a disputed contract cannot prove it by showing, as an independent item of evidence, that, for the consideration, he entered a charge against himself in his own book. This is what the plaintiffs did in the case at bar. Furthermore, it was not the best evidence because the plaintiffs themselves testified personally in court, and as no rent was actually paid in cash during the period in question the plaintiffs could have testified to the amount of rental alleged to be due by them to the defendant without the intervention or admission of the book account relating thereto.

It has been decided that the rule admitting book entries to prove commercial transactions cannot be extended to prove cash paid or money loaned or advanced, or collateral or special transactions and contracts incidental to the business of the party offering such books. Such transactions are usually susceptible of proof by other evidence, and the books are therefore not the best evidence of them. See Henry, Pennsylvania Trial Evidence, 134-135, sec. 106, and cases there cited.

While books of entries altered in a material point cannot be submitted to a jury, the court does not consider the lead pencil notation in question of such a nature.

Under the particular facts of this case, and considering the nature of the book account, the court has concluded that the exhibits "O. S. S. nos. 1 and 2", consisting of the two ledgers or alleged books of original entry of the plaintiffs, were erroneously admitted in evidence. At the most, they could have been used as a memorandum by plaintiffs in their testimony to refresh their recollection. It was so decided in Wilkes-Barre Automobile Co. v. Malinowski, 57 Pa. Superior Ct. 118, Croushore's Estate, 79 Pa. Superior Ct. 286, Eshleman v. Harnish, 76 Pa. 97, and McKnight v. Newell, 207 Pa. 562.

The plaintiffs declare in their statement of claim on the books of original entry and base their claim thereon. The case was tried on that theory, and a verdict by the jury rendered in favor of plaintiffs.

The other minor questions raised by the defendant need not be considered, in view of the foregoing conclusions.

The court therefore grants a new trial in this case, and now, January 12, 1934, the rule for a new trial is made absolute.

From George Ross Eshleman, Lancaster, Pa.