466 AHL v. AHL, Appellant.

Quitman P. Ahl v. Peter A. Ahl, Executor of Daniel V. Ahl, deceased, Appellant.

*Contract—Evidence—Trust and trustees—Book of accounts.*

A firm consisting of three partners was engaged in manufacturing pig iron. The furnace plant was owned by the firm; the ore was obtained from a bank owned by one of the partners. The firm became embarrassed, and to insure the continuous operation of the furnace it was agreed that Q., a son of one of the partners, should take the lease of the furnace and conduct the business in his name for the benefit of the firm. The stock on hand was transferred to him, and the ore tract was conveyed to him. An agreement was entered into by the members of the firm for the purpose of indemnifying Q. against any liabilities he might incur on their account. Shortly after this arrangement was entered into, one of the creditors of the firm becoming urgent, a deed of trust for the ore tract was executed to secure the debt. Q. joined in the deed of trust. Seven years afterwards the ore tract was sold to pay the debt. The business was conducted in Q.'s name for about three years. Seven years after the sale of the ore tract and one year after the death of the last survivor of the firm, Q. for the first time claimed that he had paid $8,000 for the ore tract, and brought suit against the estate of the partner who had owned it to recover this amount. At the trial his ledger was offered and received in evidence to prove the payment of the purchase money for the ore tract of the firm. The defendant claimed that the ore tract had been conveyed to Q., with the property of the firm, to enable the business to be conducted in Q.'s name for purpose of liquidation. *Held*, (1) that the admission of the ledger in evidence was error; (2) that the question in the case was whether Q. had paid for the ore tract, and whether it was his property; (3) that the agreement of indemnity against liabilities in connection with the evidence of the time of its preparation and delivery is strongly corroborative of the defendant's position; (4) that it was error for the court to so instruct the jury as to leave upon their minds the impression that it was necessary for the defendant in order to justify a verdict in his favor to establish a parol trust as to the ore tract by evidence that was precise, full, clear and satisfactory, and that he had failed to furnish such evidence.

Argued April 28, 1896. Appeal, No. 3, Jan. T., 1896, by defendant, from judgment of C. P. Cumberland Co., Nov. T., 1893, No. 35, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed.

Assumpsit to recover the value of a certain ore tract. Before SIMONTON, P. J., of the 12th judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

At the trial Mr. Wetzel, counsel for plaintiff, made the following offer:

It is proposed to prove by the plaintiff, on the witness stand, that the deed of 6th of March, 1877, was an absolute deed on its face, without condition, use or trust attached thereto; that the consideration was paid; that he took possession of the property; that it was absolutely in his name; that he paid the taxes up until February, 1880, when D. V. Ahl and John A. Ahl, by virtue of the purchase of the mineral rights of this property from the United States government, ousted him; that he went personally on this property, had personal supervision of it, paid the labor and expended several thousand dollars in taking care of it after its purchase on 6th of March, 1877; that as to said paper purporting to be dated June 13, 1877, averred to be an indemnity, and acknowledgment on his part that his title was not a bona fide one, he has no knowledge, that he never received it, never accepted of it and was not present; also, to show, in contradiction of the defendant, that John A. Ahl was not the manager of John S. Ahl & Co. over this property in the years 1877, 1878 and 1879; also, to show who composed the firm of John S. Ahl & Co., in contradiction of Peter A. Ahl that he was a member thereof.

Judge Sadler, counsel for defendant: We have no objection except we desire that Mr. Wetzel shall state to your honor how it was paid, when it was paid and to whom.

Mr. Wetzel: Four thousand dollars, Daniel V. Ahl's share of the purchase money, was paid to P. A. Ahl & Brother in the the journal of Q. P. Ahl, with the knowledge and assent of P. A. Ahl & Brother for one half, with the knowledge and assent of Peter A. Ahl and D. V. Ahl, for one half of their interest in the Virginia ore bank situated in Jefferson county, West Virginia, and entered in the ledger, page 34, and that the other $4,000 was adjusted between the witness and his father. We also offer the ledger of Q. P. Ahl showing the account of P. A. Ahl & Brother to which it was credited.

Objected to.

The Court: Having in view the fact that Peter A. Ahl testified, not only that the consideration was not paid, but that it was not to be paid,—there was to be no consideration,—we think

this is contradictory of that. Exception noted for the defendant.

By Mr. Wetzel:

Q. What book is that? A. This is my ledger. Q. Does it contain your account with P. A. Ahl & Brother? It does. [1]

Defendant offered in evidence the following agreement:

"Whereas, Q. P. Ahl holds a lease of the Antietam Iron Works from Daniel V. Ahl, and he also holds a title to the Virginia ore bank property from J. A., D. V., and P. A. Ahl, who are conducting a business at said Antietam Iron Works under the firm name of J. S. Ahl & Co.,

"And whereas, the said firm of J. S. Ahl & Co., are indebted to William T. Hamilton, the Hagerstown Bank and other creditors, and a chattel mortgage is held by said Hagerstown Bank for its proper protection, and the above named real estate is to be held equally liable for any indebtedness not fully provided for,

"And whereas, it is agreed by said creditors that all of the said property shall be used in the manufacture of iron at said works, the proceeds of which are to be converted and appropriated to the benefit of the creditors of the said J. S. Ahl & Co., through an agent for said purpose under the direction and superintendency of a person selected by said J. S. Ahl & Company,

"And, whereas the said Q. P. Ahl has been selected for that purpose, now it is understood that he shall be protected and saved harmless from any individual liability that shall be incurred by him in the management of said business and the assuming of any indebtedness of the firm of J. S. Ahl & Company, excepting the $6,000 mentioned in said lease and payable to the Hagerstown Bank, as is more fully set forth in said lease. The rental under said agreement being assumed by J. A. Ahl in his final settlement of the partnership business of J. S. Ahl & Company, as heretofore, we also agree that if any sale of the Antietam Iron Works and ore banks are made by the said J. A., D. V., and P. A. Ahl while under the management of Q. P. Ahl, then there shall be paid him out of the proceeds of said sale at the time of conveyance the sum of $5,000, and in addition thereto all moneys advanced by him while assisting 'n the

operation of said works, and all individual liabilities incurred to be fully paid, and there shall also be paid out of the proceeds of said sale the bond of J. A. Ahl, in full, with interest accrued on same at the time of payment.

" Q. P. Ahl is allowed, in case of any sale, to reimburse himself for any moneys expended by him in the operating of said works out of the ore manufactured, a full account of which is to be kept and rendered from time to time ; Q. P. Ahl to be held to account to the said J. S. Ahl & Company, of the iron so manufactured, only that which has been sold and actually shipped by him, and in no event to be held for any liabilities of the said firm further than the extent of the property placed in his hands for that purpose, and the amount of iron so sold and delivered.

" Witness our hands and seals this 13th day of June, A. D., 1877.

|                          |                          |
| ------------------------ | ------------------------ |
|                          | J. A. AHL,      [SEAL].   |
| " Witnesses :            | P. A. AHL,      [SEAL].   |
| " M. WILLIAMS,           | DAN. V. AHL, [SEAL]."     |
| " WILLIAM WOODBURN.       |                          |

The court charged in part as follows :

As we view this case, it presents one definite question of fact to be determined by you, and as you determine that fact so must the verdict be. There is testimony relating to many other facts connected with the case, which you have also to consider, but they are all to be considered with reference to the determination of the one question in the case, and that is whether the purchase money of this property, that is, the Virginia ore bank, which was conveyed to the plaintiff, was paid by him. That property was conveyed to him by this defendant and some others connected with him. It was afterwards mortgaged by the plaintiff, in connection with the others, for their debt, and it was afterwards sold to pay their debt. If it was simply a security for that debt, and was his property which was mortgaged to secure that debt and if it was taken to pay that debt, then they are liable to him for the amount that was so taken from him. And that is the question that you have to determine, whether it was his property. It was conveyed to him by a deed absolute on its face, as you have heard, and the pre-

sumption would be, therefore, that he did pay for it. As I understand from the statement of counsel, there is a receipt for the purchase money on the deed, and, that being the case, the presumption, in the absence of anything more, would be that he did pay for it, and the burden of proof would be on the defendant to show that that was not the case. You are to consider and determine from all the evidence in the case what the facts are, whether he paid for that property, or whether it was conveyed to him without the intention or any guaranty being given that it was to be paid, or for some other purpose.

[It has been claimed here by the defendant, to a certain extent at least, that it was conveyed upon a certain trust; and on behalf of the plaintiff it is contended that there is no legal proof of a trust, or that whatever trust there is being simply by parol, it could not be received to establish an express trust, and in that respect we agree with the contention of the plaintiff. There is no competent evidence produced here that would establish an express trust, for two reasons, first, because it is not in writing as required by law, and, second, because it is not definite, clear and distinct,—such proof as is required for that purpose.] [7]

But we do not consider that that controls the case. If the plaintiff never paid for this property, but it was simply conveyed to him by this defendant and others with the understanding and agreement that it should be held as security for their debt, and if it was afterwards sold to pay that debt, he lost nothing. If he didn't pay for it, and it was afterwards taken to pay their debt, and he agreed that it should be sold for that purpose, then he lost nothing. But if it was conveyed to him and if he paid for it, then, being taken to pay their debt they would be, in fairness and in equity, liable to pay back to him whatever he lost, not the value of the property, for it might be more, but whatever he lost. So you see that it depends upon whether he paid for the property or not. If he didn't he lost nothing. If it was their property, and if it was afterwards taken to pay their debt, and he paid nothing for it, he lost nothing and he cannot recover.

There has been considerable testimony offered in this case relating to the Antietam Iron Works, and it has been contended by the plaintiff, and we have been asked in one of his points to

say to you that that testimony has nothing to do with this case. It has to do with it, gentlemen, just this far: If the transactions with respect to the Antietam iron property, what was done by the one party or by the other, aids you in determining the main question in this case, to wit, the question of the payment of the purchase money, it is evidence for that purpose and for that alone. You will have no concern with the Antietam Iron Works transaction as an independent thing, but so far as what was done by the parties in connection with those works throws light upon the question,—the fundamental question in this case, whether that purchase money was paid, was intended to be paid,—just so far it is evidence in this case, and for that purpose only.

There is another item of evidence in this case that is controverted, and that is the agreement of June 13, 1877. The defendant sets up that agreement, alleging it was practically an agreement between the defendant and the plaintiff, and they claim that it ought to be used as evidence in the case to aid you in determining the main question. One witness for the defendant, Peter A. Ahl testifies that that was an agreement made between the defendant and the plaintiff, and that the paper, after it was executed, was delivered by him to the plaintiff. The plaintiff denies that he ever knew anything about it, that it was ever given to him, and that he ever had anything to do with it. If that be so, then that paper has nothing to do with the case. If you find that that paper was not delivered to the plaintiff, that he had nothing whatever to do with it, then you will throw that paper out of the case entirely. If you find that it was delivered to him, that he became a party to it, that he accepted it, then whatever bearing that paper has upon the main question is to be considered by you. You must first determine whether it is a paper in the case or not, whether the plaintiff ever received it or accepted it. Having ascertained that, and understanding in what respect you are to consider the Antietam Iron Works matter, you will take the whole evidence on the one side and on the other as it has been presented to you, and from that determine the one question that I have indicated. The testimony has been commented upon so fully by counsel on one side and on the other, and it is so fresh in your recollection, that I do not intend to either detail it or comment

upon it, more than to say that you are to consider it from one side and from the other. Examine it carefully and critically and then determine from all the evidence in the case what the fundamental fact in the case is, was the purchase money paid by the plaintiff to these defendants for that Virginia ore bank property? And, in that connection, of course you will remember what has been testified to by the witnesses on the one side and the other as to its payment, as to the way in which it was paid, whether in cash or by giving of credit, etc. Consider all that and ascertain from it all whether he put his money in it by cash payment of money or by giving credit to those who owed him, and if you find that his money went into it, that it was his property and it was taken from him to pay their debts, then he has a right to recover it back. If it was not his, if he did not put his money in it, he has lost nothing and he has no right to recover anything.

Plaintiff's points and answers were among others as follows:

2. That to prove an express parol trust contemporaneous with and to affect a deed absolute on its face, the evidence must be precise, clear and satisfactory, and such as will satisfy the conscience of a chancellor to reform said deed and insert the trust. The evidence in this case is not precise, full, clear, and satisfactory as to purpose, terms, etc., and the alleged parol, express trust is not sustained. *Answer:* That is affirmed. [3]

4. That the agreement of June 13, 1877, signed by J. A. Ahl, D. V. Ahl, and P. A. Ahl, and purporting to be an indemnity to Q. P. Ahl, is not such an acknowledgment on part of Q. P. Ahl as will establish a trust and bar the statute of frauds. *Answer:* That is affirmed. [4]

6. That the agreement of June 13, 1877, signed by John A. Ahl, D. V. Ahl and P. A. Ahl, and purporting to be an indemnity to Q. P. Ahl, is not sustained by such proof as will submit it to a jury to establish a trust or bar the statute of frauds. There is only oath against oath as to delivery to Q. P. Ahl, and no proof that Q. P. Ahl accepted it as the truth of the facts therein contained. *Answer:* To that we say that the paper would not establish an express trust, but as to the question of whether it was delivered or not, you will determine from the evidence in the case. If you find that it was not delivered, then it is out of the case entirely. If you find that it was de-

livered, then you use it so far as it throws light upon the fundamental question in the case, as we have already said to you. [5]

7. That the proof that the trust deed of Darby, December 27, 1877, was in pursuance of a parol agreement to hold the said land for benefit of creditors of John S. Ahl & Co., made at the time of the execution of the said deed of March 6, 1877, is insufficient. *Answer :* With respect to that, we have already said that there is no proof in this case to show an express trust. [6]

Verdict and judgment for plaintiff for $5,792. Defendant appealed.

*Errors assigned* among others were, (1) rulings on evidence, quoting the bill of exceptions; (2–7) above instructions, quoting them; (8) that the answers to the points and the charge were inadequate, confusing and misleading.

*John Hays* and *W. F. Sadler*, with them *S. M. Leidich* and *William Trickett*, for appellant, cited, on the statute of frauds: Harris v. White, 81 N. Y. 532; Wilcox Silver Plate Co. v. Green, 72 N. Y. 17; McCullough v. Norwood, 58 N. Y. 562; Robbins v. Robbins, 89 N. Y. 251; Hays v. Reger, 102 Ind. 524; Barber v. Milner, 43 Mich. 248; Eaton v. Eaton, 35 N. J. L. 290; Newman v. Nellis, 97 N. Y. 285.

*A. G. Miller*, with him *C. W. Webbert* and *J. W. Wetzel*, for appellee, cited, on the question of parol trust: Stewart's App.. 98 Pa. 377; Pancake v. Cauffman, 114 Pa. 113; Burr v. Kase, 168 Pa. 81; Bright v. Knight, 35 W. Va. 40; 8 Am. & Eng. Ency. of Law, 664; Crane v. Hardy, 1 Mich. 56; Rape v. Heaton, 9 Wis. 329; Petersen v. Chemical Bank, 32 N. Y. 21; 19 Am. & Eng. Ency. of Law, 46; 33 Am. & Eng. Ency. of Law, 290; Cain v. Cox, 23 W. Va. 594; Philbrook v. Delano, 29 Me. 410; Stevenson v. Crapnell, 114 Ill. 19; Fouty v. Fouty, 34 Ind. 433; Barnard v. Flinn, 8 Ind. 204; Boyd v. Stone, 11 Mass. 341; Hall v. Congdan, 55 N. H. 104; Mescall v. Tully, 91 Ind. 96; Lawson v. Lawson, 117 Ill. 98; Dean v. Dean, 6 Conn. 284; Act of April 22, 1856, P. L. 533; Kellum v. Smith, 33 Pa. 158; Kistler's App., 73 Pa. 393; Kraft v. Smith, 117 Pa. 183; Dyer's App., 107 Pa. 454; Salter v. Bird, 103 Pa. 436.

OPINION BY MR. JUSTICE WILLIAMS, July 15, 1896 :

There is but a single question of fact about which the parties to this action are at variance. The position and significance of that question will be readily seen by a glance at the facts that are conceded. • The firm of J. S. Ahl & Company consisted of J. S. Ahl, John A. Ahl and D. V. Ahl, residents of Cumberland county, Pa. They were engaged in the manufacture and sale of pig iron at Antietam, Maryland. They obtained much of their iron ore from a tract of land in West Virginia known as the Virginia Ore Bank. The furnace at Antietam was owned by D. V. Ahl. The tract of ore was owned by the members of the firm as tenants in common. In 1877 the firm became somewhat embarrassed, and the continuous operation of the furnace was necessary to the payment of its debts. In order to make this possible, it was agreed that Q. P. Ahl, the plaintiff, a son of one the partners, should take the lease of the iron works and conduct the business in his name for the benefit of the firm. At the same time, the stock of coke and ore on hand was transferred to him and the ore tract was conveyed to him. The business was then continued by the firm, in the name of Q. P. Ahl, and under the superintendency of William C. Bradley, until the first of April 1880 when it was closed. About the time work was begun in the name of the plaintiff, an agreement was entered into by the members of the firm for the purpose of indemnifying him against any liabilities he might incur on their account in consequence of the use of his name in what was actually their business. This was a reasonable and proper precaution for the protection of Q. P. Ahl under all the circumstances, and the weight of the evidence is in favor of the defendant's allegation that it was duly delivered to him at the time it was prepared and signed. At all events, it is conceded that the work was carried on at Antietam by the firm, in his name, and that the money was furnished by the firm for all the expenses incident to the business. The plaintiff claimed no interest in the business as against J. S. Ahl & Co., nor as we understand did he claim royalties for the ores used. Late in the year 1877, William T. Hamilton, a creditor of the firm for a considerable sum, insisted on additional security for the money due him. To satisfy this demand, the firm offered and he accepted the Virginia ore tract; and a trust deed of it was

made by the members of the firm and Q. P. Ahl to F. M. Darby for the purpose of subjecting it to Hamilton's debt. More than seven years afterwards, the ore bank land was sold under an order of the Circuit Court of West Virginia for the payment of this debt. In 1892, D. V. Ahl died. On the sixteenth day of September 1893, or about six years after the sale of the ore bank by the sheriff, this action was brought. The position of the plaintiff now is that he became the owner of the ore tract by virtue of the conveyance of 1877, and that he paid $8,000 to the firm as purchase money therefor; that he joined in the trust deed without any consideration therefor; and that the subsequent sale of the tract for Hamilton's debt was an appropriation of his property for the benefit of J. S. Ahl & Co. for which he has a claim upon the members of the firm for reimbursement. This claim does not seem to have been made upon the firm while it was in existence, nor upon any member of it in his lifetime, nor until a year after the last survivor was in his grave. The single question of fact raised on the trial was over the payment by the plaintiff of the purchase money for the Virginia ore tract. If this was not paid, then the title of the plaintiff to the ore tract was like his title to the lease of the furnace, and to the coke and ores in stock, at the time the business was undertaken for the firm in his name. The defendant alleges that these titles were put in Q. P. Ahl at that time to enable the firm to continue its business, for purposes of liquidation, in his name; and that he had no ownership in anything that was so transferred except as the agent of J. S. Ahl & Co. and that the execution of the trust deed by the plaintiff was a use of the title of the ore tract in accordance with the interests and directions of the owners, and its consequent sale by the sheriff divested no property right of the plaintiff, but simply applied the proceeds of the tract to the debt of its owners.

Now it will be seen that this is not a proceeding against a trustee. If a trust ever existed it has been voluntarily executed. It is not an effort to escape the bar of the statute of frauds. It is an action in which the plaintiff claims to recover for money raised from his property, with his full consent, and applied to the payment of the debts of J. S. Ahl & Co. The reply made by the defendant is that the property from which the money was raised did not belong to the plaintiff but was

the property of the firm to whose debts it was appropriated. The question thus distinctly raised between these parties between whom confidential relations existed at the time is, did the plaintiff pay the owners for this land in 1877, or did he take it as he took everything else relating to the business of this firm for the benefit of the firm? The points submitted on the part of the plaintiff drew the attention of the learned judge away from this question, and led him to leave on the minds of the jury the impression that to justify a verdict in favor of the defendant, it was necessary for him to establish a parol trust by evidence that was precise, full, clear and satisfactory; and that he had failed to furnish such evidence. The assignments of error from the 3d to the 7th inclusive relate to this subject. The part of the charge embodied in the seventh assignment will show the character of the instructions referred to. The learned judge said " It has been claimed by the defendant, to a certain extent at least, that it (the ore tract) was conveyed upon a certain trust, and on behalf of the plaintiff it is contended that there is no legal proof of a trust, or that whatever trust there is being simply by parol it could not be received to establish an express trust, and in that respect we agree with the contention of the plaintiff. There is no competent evidence produced here that would establish an express trust, for two reasons, first, because it is not in writing as required by law, and, second, because it is not definite, clear and distinct, such proof as is required for the purpose."

There is a sense in which the arrangement between J. S. Ahl & Co. and the plaintiff may be said to have created a trust inasmuch as he clearly held the iron works, the coke, the ore, and the business, simply for the benefit of the firm; but it was a trust recognized and executed without question. The trust relation in this sense of the word was a conceded fact in the cause. It embraced, even in the plaintiff's own view of it, everything that came into his hands from the firm except the ore tract. This tract he used as he would have used it if he had recognized the trust as to it. He subjected it to the debts of the firm. He practically turned it over to them by the trust deed. Now after the lapse of many years he sets up a claim to be reimbursed. The defendant answers that this ore tract was part of the property of the firm put into his hands to enable

him to go on with the business of J. S. Ahl & Co., for their benefit. That he entered upon this trust, executed it, closed out the business, and retired from it having converted the property in his hands including the ore tract to the purposes of the firm. The reply is " what you say is true except as to this tract. This I took for myself and paid for it." This then is the only question. Did the plaintiff pay for this particular piece of property when the conveyance was made to him? If he bought it and paid for it, it was his. If he did not, it was like all else that the firm turned over to him, a part of the property needed in the prosecution of the iron business and the payment of the debts of the firm ; and it was used in accordance with the wishes of the real owners.

So much of the first assignment of error as relates to the admission of the ledger of the plaintiff as evidence against the defendant is also sustained. It was offered and received as proof of the payment of the purchase money for the ore tract to J. S. Ahl & Co. It was clearly incompetent and we do not see that the defendant has waived the objection taken at the time by him.

An additional observation should be made in regard to the agreement of June 13, 1877, indemnifying Q. P. Ahl against liabilities to be incurred in the conduct of the business of J. S. Ahl & Co. This paper in connection with the evidence relating to the time of its preparation and delivery is strongly corroborative of the defendant's position. It harmonises with the relations conceded to exist between the parties, and was entitled to weight on the disposition of the single question of fact in the case for the additional reason that its recitals are really inconsistent with the position now taken by the plaintiff. We agree with the learned judge that the verdict appears to be against the weight of the evidence ; and we think this must be accounted for by the fact that the jury were led away from the single question in the case and drawn to the conclusion that having failed to establish a valid trust under the statute the defendant had failed to make a defense to the plaintiff's claim and that the plaintiff was therefore entitled to recover. The judgment is now reversed and a venire facias de novo awarded.