## Williams et al. *v.* Caples, Appellant.

Argued March 31, 1941.   Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Harry Doerr,* with him *Weimer & Bennett,* for appellant.

*Philip N. Shettig,* with him *LeRoy J. Scanlan, Edward J. Harkins* and *Thomas A. Swope,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, May 26, 1941:
George Walker Williams and Elmer E. Reese, appellees, as administrators c.t.a. of the estate of Annie

S. Moore, deceased, confessed judgment against W. S. Caples, appellant, on a judgment exemption note for $3,500, dated August 14, 1931, and maturing one day after date, which was found in the possession of their decedent at the time of her death. Appellant obtained an order to open the judgment, setting forth in his petition that the note had been paid by inclusion in subsequent mortgages and, upon the facts presented, we sustained this order on a former appeal: *Williams v. Caples,* 338 Pa. 451.

At the ensuing trial in the court below, appellant sought to establish the averments of fact set forth in the petition by certain exhibits and by the testimony of his bookkeeper, one Ernestine Goldstein. It was shown that, in 1932, appellant was indebted to appellees' decedent in the sum of $53,000, which debt appears in the books of the partnership of which appellant is the surviving member, under date of January 2, 1932, with a notation "Int. 4% Semiannually July & Jan. each year—July 9, 1932 changed to 3½%", following which are entries showing the payment of interest in July, 1932, and in January and August, 1933. These entries were identified by Miss Goldstein, who testified that they had been made by her, at the direction of appellant; in the course of the partnership business. While she stated that the original entry referred to a bond and mortgage executed by appellant and his son to the decedent on January 2, 1932, in the amount of $53,000, bearing interest at 4% and payable in 5 years, which she testified she had seen at the time of execution, she admitted that she did not know whether the bond and mortgage had ever been delivered to the decedent and that she had no conversation with the decedent regarding the mortgage or the reduction of interest, but had been informed of these matters by appellant.

After the interest payment in August, 1933, the partnership accounts show an entry reading "Sept 11 Int

Prin—$200.00"; and additional payments are recorded in the year 1934, as follows: "Feb. 14 Payment on accnt. $52,000.00—$400.00", "Sept 1 Payment on accnt.— $200.00"; which entries Miss Goldstein testified represented payments on principal, reducing the mortgage debt to $52,200. She explained that the payment of September 11, 1933, had erroneously been entered as a payment of interest and that she added "Prin" as a correction, appellant having informed her that the decedent would make no further charge of interest on the obligation. The witness also explained the notation upon a check of the partnership produced by appellees, bearing the same date and payable to the decedent in the sum of $200, "On account int." as an error, and that the figure $52,000, appearing in the first book-entry for 1934, was an error for $53,000.

Appellant offered in evidence a bond and mortgage in his possession, dated January 2, 1932, and bearing longhand alterations changing the original debt from $53,000 to $52,200, changing the period of maturity from five to ten years, and altering a provision for interest at four per cent to read "without interest"; which bond and mortgage counsel asserted was the $53,000 obligation referred to by Miss Goldstein and had been delivered to the decedent and returned by her to appellant. While counsel suggested that the alterations, which were clearly of a material nature, were made by a deceased attorney, whose handwriting was identified in some of the changes by a witness, in preparing a new bond and mortgage in a lesser amount, the making of the alterations was not explained by the testimony of any witness. Nor was any evidence offered to prove the delivery of the original document to the decedent or to show how it came to be in appellant's possession. This document was held inadmissible by the trial judge as was also a book entry, identified by Miss Goldstein, referring to the note in suit and containing the single word "Paid". No date of payment was entered, and

the witness admitted that her only knowledge of the fact recorded was information received by her from appellant. Finally, appellant offered in evidence a bond and mortgage, dated September 1, 1934, found in the possession of the decedent at her death and since recorded, which was executed by appellant and his son to the decedent to secure the payment of the principal sum of $52,200, without interest, ten years from its date, and this was admitted without objection.

The jury returned a verdict for appellant, specially finding that the $3,500 judgment note was included in "the mortgage", whereupon appellees filed a motion for judgment n. o. v. This motion having been granted by the court below, appellant has appealed, contending that under the evidence the jury was warranted in inferring that the decedent, who was appellant's sister-in-law, had withdrawn her savings to satisfy the indebtedness of his partnership to a bank, had accepted the first bond and mortgage from the partners in satisfaction of all other obligations, inadvertently omitting to return the judgment note here involved, and had surrendered that bond and mortgage upon the delivery of a second bond and mortgage to secure the reduced indebtedness, having agreed to forego the receipt of interest because the bank in which she had formerly deposited the savings loaned to appellant had failed and would have paid no interest on the fund had it not been withdrawn; consequently, that the verdict of the jury in his favor should have been sustained.

The fact that the note was found in the possession of the decedent gives rise to a presumption that it was a valid and subsisting obligation. "The possession of an instrument in writing for the payment of money affords proof, prima facie, of the right in the holder to recover upon it according to its terms. The holder is not required to prove that it has not been paid. His case is made by the production of the instrument in the first instance, and the burden of showing payment

is on him who alleges it": *Whitney v. Hopkins,* 135 Pa. 246, 255. See also *Koenig v. Curran's R. & B. Co.,* 317 Pa. 431, 432. The sole question presented, therefore, is whether sufficient legally competent evidence was offered by appellant in support of his defense of payment, by inclusion in subsequent obligations, to overcome this presumption.

We think the question must be answered in the negative. The entry of the word "Paid" in appellant's books was not evidence of payment. It was merely the bookkeeper's record of a self-serving statement made by appellant, and there was no evidence that the decedent had access to the partnership books or that she was aware of the entry. Nor does the "Uniform Business Records As Evidence Act" of May 4, 1939, P. L. 42, which provides that records made in the regular course of business shall be admitted in evidence "if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission", purport to make such record admissible, particularly in a suit against the estate of a decedent. Here the only source of information was appellant himself, the time and method of payment are not shown in the entry, and it is the statement of a conclusion rather than a fact. Clearly it was inadmissible. See *Ducoign v. Schreppel,* 1 Yeates 346; *Saam v. Saam,* 4 Watts 432; *Hess' Appeal,* 112 Pa. 168; *Ahl v. Ahl,* 176 Pa. 466.

Not only did appellant fail to prove that the note was intended to be satisfied by, or merged in, the alleged mortgage for $53,000, but he failed to show that such mortgage and bond ever existed as an obligation. The altered and defaced document offered in evidence was properly excluded in the absence of any proof that it had been delivered to the decedent, and even if delivery had been shown, the question of whether the alterations were made before or after such delivery would have remained unanswered. There being no proof that the instrument was ever in the possession of the decedent,

its production from the possession of appellant was entirely devoid of probative value. No inference whatever could be drawn from the fact of his possession, and the books of account could not supply the missing fact of delivery, for they do not refer to a bond or mortgage or any other evidence of indebtedness, but merely show a debt of $53,000 to the decedent.

Giving him the benefit of every legitimate inference and accepting the doubtful and erroneous entries in the partnership books at their face value, the evidence relied upon by appellant establishes merely that he gave the decedent a note for $3,500 which she retained; that his total indebtedness to her was $53,000, which he reduced by payments upon principal totalling $800; and that on September 1, 1934, he executed and delivered to the decedent a bond and mortgage in the reduced sum of $52,200. Despite the ingenuity and plausibility of counsel's surmises regarding the transactions between these parties, our review of the record discloses no evidence whatever sufficient to establish that the decedent accepted this bond and mortgage in satisfaction of the retained and, therefore, presumptively valid note, in the absence of which it must be assumed that it remains in effect, the subsequent bond and mortgage being accepted only by way of collateral security.: *Citizens' Bank of Wind Gap v. Lipschitz*, 296 Pa. 291. See also *Lincoln Dep. & Tr. Co. v. Sanker*, 305 Pa. 576; *Aliquippa N. Bk. v. Harvey*, 340 Pa. 223.

Judgment affirmed.