Dorothy J. AWES, Administratrix of the Estate of George M. Campbell, Deceased, Appellant,

v.

T. T. WALKER, Appellee.

No. 111.

Supreme Court of Alaska.

Feb. 21, 1962.

Rehearing Denied April 9, 1962.

**1.** Rogge v. Weaver, No. 63, 368 P.2d 810 (Alaska, Feb. 6, 1962).

Harold J. Butcher, Anchorage, for appellant.

John C. Hughes and Robert C. Lowe, Hughes & Thorsness, Anchorage, for appellee.

Before NESBETT, Chief Justice, and DIMOND and AREND, JJ.

DIMOND, Justice.

On March 8, 1954, Walker borrowed $3,000 from Campbell, and gave Campbell his promissory note in that amount payable at the rate of $200 per month with interest at 8% per annum. Campbell died later that year, and his administratrix Dorothy Awes, found the note among his personal effects, but could find no evidence of payment. After unsuccessful attempts to make collection, she brought this action to recover judgment for the full amount of the note and interest. Walker's sole defense was payment. The court found in his favor, and the administratrix has appealed. The only issue before us is whether there was sufficient evidence to support the court's finding that the note had been paid.

■ The administratrix established a prima facie case of non-payment when she introduced the note in evidence, and no further proof was required.[1] However, she testified that she had inquired at all the banks in Anchorage and found two checking accounts in Campbell's name. She examined all the bank statements from the time the note was signed until Campbell's death, but found no evidence from the records indicating the note had been paid.

■ Walker had the burden of proving his defense of payment.[2] This proof consisted of his testimony and that of another witness. Walker stated that he had paid Campbell a total of approximately $522 with three different checks at various times, and then made a final payment with $2,600 in cash.

The other witness was an attorney who had an office adjoining Walker's. He was accustomed to wandering into Walker's office to have coffee and pass the time of day. He testified that when he was there on one occasion he observed Campbell and Walker sitting across from each other at Walker's desk, that there was some currency on the desk, that Walker lumped it together and gave it to Campbell, and that there was some discussion between the two of them regarding the production of a note.

1. Knauer v. Levy, 115 So.2d 776, 777 (Fla. App.1959); Stockgrowers Nat. Bank of Cheyenne v. Crosby, 39 Wyo. 454, 273 P. 679, 680 (1929).

2. United States v. Johnston, 133 F.Supp. 633, 634 (D.Minn.1955); Folsom v. Grove, 233 Iowa 1140, 11 N.W.2d 368, 369 (1943); Williams v. Caples, 342 Pa. 230, 20 A.2d 302, 304 (1941); Beutel, Brannan, Negotiable Instruments, 1029–1030 (7th ed. 1948).

The witness did not know how much money was handed to Campbell or what particular note was being discussed. He was uncertain as to when this event occurred, believing only it was sometime during 1954 and prior to August of that year.

This is the evidence upon which the court based its finding that the note had been paid. Considered alone it might be sufficient to support that finding. But when other facts are considered, it is not. Walker did not produce the cancelled checks representing the $522 he claimed to have paid. He produced no documentary evidence, such as a receipt, showing that Campbell had received the cash, although he admitted that an ordinary business receipt would have been adequate evidence of payment and that he kept receipt forms available on his desk. He testified that he took the $2,600 cash from his office safe and gave it to Campbell, made a notation of this in the form of a cash memo on a slip of paper or the back of an envelope, but did not enter the transaction in a regular book of account. When asked whether he had the cash memo, he answered that he didn't know whether it was available or not. On further questioning he admitted that there might still be some notation in his business safe to show that he had made the payment with cash taken from the safe, but he had not checked to see, apparently feeling that even if he found such a notation it would be considered self-serving.

The $3,000 note bore interest at the rate of 8% per year which, for a three months period, would have amounted to a total of no more than $60. And yet Walker testified that between March and June 1954 he made total interest payments to Campbell of approximately $125. In addition, he said that his first payment of interest in the amount of $62.68 was made on March 8, 1954, the date the note was executed. No interest was due on that date.

Walker also testified that the $3,000 he borrowed from Campbell was not for his own use, but that he in turn had lent it to a friend, Beaudine. However, he did not obtain from Beaudine a note or receipt or any other writing showing that Beaudine owed him that amount. Further, Walker admitted that Beaudine had never paid back the loan, that he had made no effort to collect this debt (which was nearly seven years old when Walker testified), and that it was all right with him if Beaudine never paid the money.

According to Walker, Campbell left his savings account passbook in Walker's office and ordered that the monthly installments due on the note could be paid to Campbell's account at a bank. Walker said that when he gave Campbell the $2,600 he also gave him the passbook so that he could put the money in the bank, and that Campbell later brought the passbook back to Walker and left it in his office. He did not produce the passbook, which might have contained convincing evidence of the alleged payment had it shown a deposit of $2,600 in Campbell's savings account. Walker explained the absence of the book by stating he had given it to the administratrix after Campbell's death, which she denied. But Walker did not explain why after the note was fully paid, he had the passbook in his possession. He had no use for it at that time; for he admitted that he had used it only once to deposit an initial payment of $200 on the note, and had no occasion to use it again since he had no access to other sums of money belonging to Campbell.

In finding that the note was paid, the trial judge simply took Walker at his word. This is evident from the judge's statement, made at the conclusion of the case, that he had personally known Walker for a great number of years and had found him to be an honest man.

The trial judge has the right to exercise his judgment as to the credibility of the witness. But he has no right to place blind faith in a witness's veracity when all that the latter said and did in the circumstances of the case renders his credibility extremely doubtful. Walker was an experienced public accountant. It is highly

improbable, if not incredible, that a man of his background and experience would follow the practice which he said he followed in this case. His failure to obtain return of the note, his failure to produce the cancelled checks, his failure to obtain a receipt or other documentary evidence showing payment of the note, his failure to keep any books or records relating to the transaction, and his failure to make any effort to collect the $3,000 from Beaudine, are actions totally inconsistent with good business practices that should be expected of a man like Walker.[3] These are compelling circumstances indicating the note was not paid. Walker's statement that he did pay the note is so incompatible with inferences which reasonably should be drawn from other things he said and did, that we are convinced the note was not paid and that the trial court was mistaken in finding that it was.

Our conviction that the finding of payment was clearly erroneous is not weakened by Walker's attempt to corroborate his testimony with the testimony of the attorney who occupied the adjoining office. That witness was extremely vague as to the date he saw Campbell in Walker's office. He testified that he saw Walker hand Campbell some currency that had been on the desk, but he didn't know how much there was, what it represented or related to, or who owned it. To hold that this event tended to prove that Walker at that time was giving Campbell $2,600 in fu'' payment of the note is speculation; it is not a conclusion reached from inferences which reasonably could be drawn from the facts.

The witness also testified as having heard some discussion regarding Campbell bringing a note to Walker. Under questioning by the trial judge, Walker had stated that he had no previous dealings with Campbell where a note was involved. The judge was apparently largely influenced from this testimony to find in favor of Walker, for in his findings of facts he said:

"That in fact the only note ever executed by the defendant in favor of the plaintiff was the $3000.00 note here in question and that in the presence and hearing of John E. Manders, the plaintiff, before he died, acknowledged to T. T. Walker, the defendant herein, that he would return the note or that the note in question was paid and accordingly this Court so finds."

This evidence would give rise to an inference that Walker had paid the note which was the subject of this action. But the validity of that inference depends upon belief in Walker's statement that this was the only note ever involved in dealings with Campbell, and we do not believe that this particular testimony is any more plausible than his testimony that he had paid the note.

In reviewing the findings of the trial court, we do not have before us evidence of Walker's demeanor while testifying. We recognize that this may have played a large part in controlling the court's decision. But regardless of how persuasive demeanor evidence may have been, and after giving it all possible probative force it may have had, we are still constrained as a matter of common sense to reject the trial court's estimate of this witness's credibility. Walker's testimony that three preliminary payments on the loan had been made by check was totally unsubstantiated by other proof which should have been available to him if he had taken the trouble to produce it. His method of handling the final cash payment claimed to have been made was entirely inconsistent with his training and background as an accountant. Our study of the record, transcript and briefs convinces us that the trial court made a mistake in granting judgment for Walker.

The judgment is reversed and the case is remanded with directions to enter judgment for the appellant.

3. Cf. Wynne v. Thiel, 286 S.W. 809 (Tex.Civ.App.1926).