**Bert AMICK, Appellant,**

v.

**METROPOLITAN MORTGAGE AND SECURITIES COMPANY, Inc., a Washington corporation; and State of Alaska, Appellees.**

**No. 951.**

Supreme Court of Alaska.
April 18, 1969.

---

James K. Tallman, Anchorage, for appellant.

Robert C. Erwin, Brian J. Brundin, Dorothy A. Haaland, Asst. Atty. Gen., Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Appellee Metropolitan Mortgage and Securities Company, Inc., obtained a judgment against appellant in the amount of $22,667 representing unpaid rentals for premises leased from Metropolitan for the period June 1, 1965 through June 30, 1966. Appellant's first point on this appeal is that the rent for the period involved had been suspended and abated by reason of Metropolitan's failure to repair the leased premises which had been damaged by an earthquake on March 27, 1964.

Pertinent here is section 3.a. of the lease which provides:

It is mutually agreed by and between the lessor and the lessee that:

a.   if during the term hereof the demised premises or any part thereof be rendered

untenantable by public authority[a], or by fire or the elements, or other casualty, a proportionate part of the rent herein reserved (whether paid in advance or otherwise) according to the extent of such untenantability, shall be abated and suspended until the premises are again made tenantable and restored to their former condition by the lessor; and if the premises or a substantial part thereof are thereby rendered untenantable and so remain for a period of 30 days, the lessee may at its option terminate this lease by written notice to the lessor. In connection with the foregoing it is agreed that lessee's decision shall be controlling as to whether or not the premises are fit or unfit for occupancy by it * * *.

Regarding this section the trial judge said:

I conclude that covenant 3.a. does not operate to give the lessee an option to unilaterally void the lease or abate the rent by deciding without more that the premises are not fit for its occupancy. If the building or part of it became untenantable as a result of the earthquake, then lessee is entitled to an appropriate remedy provided for under covenant 3.a.

The issue here is whether the trial judge was correct in his interpretation of section 3.a. of the lease, or whether appellant's decision that the premises were not fit for occupancy, i. e., were untenantable, was decisive of the question as to tenantability.

■ We agree with the trial judge that the lease provision in question did not give the lessee the right to abate the rent by deciding without more that the premises were unfit for occupancy. The premises must in fact be unfit for occupancy, or untenantable, before there could be an abatement of the rent. It would make little sense to allow the lessee to abate the rent if he simply chose to characterize the premises as untenantable when, in fact, they were not untenantable at all. The provision which makes the lessee's decision controlling reasonably can only be construed as granting this right to the lessee where there is room for an honest difference of opinion between

the lessor and the lessee as to whether the premises are fit for occupancy by the lessee. It is a question of fact as to whether such a difference of opinion may clearly exist.

■ Appellant relies on the testimony of witnesses produced by him to support his contention that the damage to the premises by the earthquake made them untenantable. One witness testified that his observation of displacement of the T-beams indicated structural damage. This witness had not inspected the building to determine its condition and did not know how the beams were fastened to the supporting walls. Another witness testified as to cracks and water marks on the walls. He knew nothing about the construction of the building and had never seen the plans. Appellant testified that it was obvious that the building was damaged by looking at it and that he believed the building to be untenantable from his own observations. He did not go into any detail as to the nature of the damage. Finally, another witness testified that he observed that the interior walls and partitions of the leased premises were separated, that some of the interior walls were out of line, and that in at least 10 or 12 places the plaster on the ceiling had fallen and loose plaster fell from time to time.

On the other hand a witness for Metropolitan, a civil engineer named Dickinson, had made a careful examination of the building. He testified that the T-beams were supported by pilasters which became chipped during the earthquake, but that they were structurally sound and the beams were not damaged; that the cracks in the wall were superficial in the masonry or the plaster and did not occur in the load-bearing walls; that there was nothing structurally wrong with the building; and that the most obvious damages, and the only ones where he recommended repairs need be made, were superficial cracks in the plaster or dry wall.

The judge found that Dickinson was a qualified and objective witness and gave his testimony full credit. He concluded that some of the testimony relating to damages offered by appellant was exaggerated. The

judge's ultimate finding was that appellant had not established that the leased premises were untenantable after the earthquake. He was influenced in making this finding, not only by his judgment as to the credibility of witnesses, but also by reason of the fact that appellant's predecessor in interest, the state of Alaska, had remained in the occupancy and possession of the premises from the time of the earthquake in March 1964 until June 1965, a period of 14 months.

■ It is the trial judge's function to judge of the credibility of the witnesses.[1] We may not reject the judge's estimate of their credibility except in the unusual case where circumstances are such as to force us to the conclusion that the judge's determination of credibility was clearly mistaken.[2] That is not the case here. We cannot find that the trial judge's determination to give full credit to Metropolitan's witness, Dickinson, and little credit to appellant's witnesses was not justified. What this means is that the judge's estimate as to credibility is binding—it means that as a matter of fact the testimony of Metropolitan's witnesses as to the minor nature of the earthquake damage was worthy of belief, whereas that of appellant's witnesses was not. This in turn means that as a matter of fact the damage was not so extensive as to make the premises unfit for occupancy, and that as a matter of fact there was not room for an honest difference of opinion between the lessor and the lessee as to whether the premises were untenantable. This being so, appellant as lessee did not have the right under section 3a. of the lease to make a controlling decision as to fitness for occupancy.

The judge was correct in finding that the rent had not abated and was due and owing for the period involved.

■■ The original owner of the leased premises was the M & J Investment Company which went into bankruptcy. Metropolitan purchased the property from the bankrupt estate, and the trustee in bankruptcy conveyed the property to Metropolitan by deed on October 30, 1965. Appellant contends that since the trustee in bankruptcy did not assign to Metropolitan any rents due the trustee or the M & J Investment Company, Metropolitan had no right to recover rent for the period prior to its purchase of the property, i. e., from June 1 to October 30, 1965.

The trial judge held that the trustee's assignment of the lease and accrued rentals was not essential to Metropolitan's claim, and that the trustee's deed of October 30, 1965 carried with it all of the existing legal and equitable rights of M & J Investment Company that the trustee in bankruptcy could convey, which included the right to unpaid rentals for the period June 1 to October 30, 1965.

The trial judge was correct. The trustee's deed to Metropolitan was in effect a quitclaim deed substantially in the form set out in AS 34.15.040(a).[3] Subsection (b) of this statute provides:

A deed substantially in the form set out in (a) of this section, when otherwise duly executed, is considered a sufficient conveyance, release and quitclaim to the grantee, his heirs and assigns, in fee of all the existing legal and equitable rights

1. Associated Eng'rs & Contractors, Inc. v. H & W Constr. Co., 438 P.2d 224, 227 (Alaska 1968).

2. *See* Awes v. Walker, 370 P.2d 187 (Alaska 1962).

3. AS 34.15.040(a) provides:
   A quitclaim deed may be substantially in the following form:
   "The grantor (here insert the name or names and place of residence), for and in consideration of (here insert consideration) conveys and quitclaims to (here insert grantee's name or names)

all interest which I (we) have, if any, in the following described real estate (here insert description), located in the State of Alaska.
"Dated this _____ day of _____, 19___."
The trustee's deed provided that the grantor, the trustee in bankruptcy, "does hereby grant, convey and release" to the grantee, Metropolitan. The use of the word of conveyance, "quitclaim", is not necessary to cause this deed to be in substantially the form provided in AS 34.-15.040(a). The words of conveyance "grant" and "convey" are sufficient.

of the grantor in the premises described in the deed.

One of the rights of the grantor, the trustee in bankruptcy, was the right to collect due and unpaid rentals from the lessee of the property of the bankrupt estate. Under the foregoing statute this right was conveyed to Metropolitan by the trustee's deed.[4] Metropolitan had the right to recover from appellant unpaid rentals for the period June 1 to October 30, 1965.

■ Appellant contends that on October 1, 1965 Metropolitan wrongfully repossessed the leased premises and deprived appellant of possession, and that this served to relieve appellant of the obligation to pay rent subsequent to that date.

Although the bankruptcy trustee's deed to Metropolitan was not executed until October 30, 1965, the referee in bankruptcy had ordered the trustee to deliver possession of the property to Metropolitan as of October 1, 1965. Metropolitan wrote to appellant on October 6, 1965 stating, among other things, that "Our firm has taken possession [of] the building as of October 1st." It is on this statement that appellant bases his claim of wrongful re-entry and repossession of the premises and eviction of appellant by Metropolitan.

Appellant has misconstrued Metropolitan's statement. All that Metropolitan meant by saying it had "taken possession" of the building was that it had acquired the property as the new owner. It is clear enough from the remainder of Metropolitan's letter to appellant that it was not taking possession of the leased premises from appellant and evicting him. Metropolitan's letter was written in response to a letter of September 14, 1965 from appellant to Metropolitan, where appellant indicated that he would pay no more rent until the building was put into a tenantable condition. In response, by its letter of October 6, 1965, Metropolitan stated its understanding that appellant "became responsible for the lease payments when the State moved out,"[5] and that the matter had been turned over to Metropolitan's attorney who would be writing to appellant. Metropolitan did offer to attempt to obtain tenants, on leases acceptable to appellant, in return for one-half of the first month's rental plus 10 percent for each month thereafter until "your master lease expires." But such an offer, which was never accepted by appellant, does not amount to a repossession of the leased premises by Metropolitan and an eviction of appellant, and thus did not relieve him of his duty to continue making rental payments as they became due.

■ It is true that in February 1966 Metropolitan leased a portion of the premises to a third party.[6] But prior to that time, in his letter to Metropolitan of September 14, 1965, appellant had made a positive statement indicating that he would not pay any rent until the premises had been put into a tenantable condition. This position was unjustified because, as we have pointed out, the premises were not in fact untenantable. Thus, appellant's statement that he would not substantially perform his contractual duty of paying rent amounted to an anticipatory repudiation which was a total breach of the leasing contract.[7] After

4. Lonas v. Metropolitan Mortgage & Sec. Co., 432 P.2d 603, 606 (Alaska 1967).

5. The state was the original lessee of the premises and had assigned the lease to appellant effective June 1, 1965.

6. Appellant never occupied the leased premises from the time the state vacated the premises and assigned the lease to appellant in June 1965. As he said in his letter to Metropolitan of September 14, 1965: "I have no interest in the space I assumed from the State of Alaska.

That is to say I have no interest in using this space myself. My interest would be in finding a tenant after the space has been made tenantable."

7. Restatement of Contracts § 318 (1948 Supp.) provides in part:
In the case (1) of a bilateral contract that has not become unilateral by full performance on one side, and (2) of a unilateral contract where the agreed exchange for the promise or for its performance has not been given, any of the following acts, done without justifica-

that occurred, Metropolitan's act in leasing a portion of the premises to another party was nothing more than an act to mitigate damages incurred by appellant's breach. For such breach of contract, Metropolitan had the right, as the trial judge determined, to recover from appellant the rentals due under the contract, less the amounts in mitigation of damages received from the third party to whom a portion of the premises had been leased in February 1966.

The judgment is affirmed.

---

tion by a promisor in a contract before he has committed a breach under the rules stated in §§ 314–315, constitutes an anticipatory repudiation which is a total breach of contract:

  (a)  a positive statement to the promisee or other person having a right under the contract, indicating that the promisor will not or cannot substantially perform his contractual duties * * *.