# Miller *v.* Dilkes, Appellant.

*Corporations—Evidence — Disputes between members — Books and records of the corporation—Equity—Accounting—Interest on balance due—Costs.*

1. The books of a corporation, although they cannot be introduced in evidence by the corporation in support of its own rights or privileges against strangers, are nevertheless admissible in evidence in disputes between members of the corporation.

2. Where an agreement for the sale of a large majority of the stock of a corporation provided that the indebtedness of the corporation should subsequently be ascertained and paid in certain proportions by the vendor and vendee, and after the sale the vendee furnished a statement of indebtedness of the corporation which should be paid by the vendor and the vendee, the accuracy of which was disputed by the vendor, who refused to pay any part of said indebtedness, it was not error, in a suit brought by the vendee for an accounting and to secure payment of the balance to be found due, to admit in evidence the books and vouchers of the corporation showing the business of the company during the time when plaintiff and defendant were both stockholders, particularly where it appeared that during such period defendant had been an officer of the corporation, had approved many of its vouchers and that the methods of bookkeeping of the corporation were acquiesced in by him, and where defendant suggested no method of ascertaining the indebtedness of the corporation other than by an examination of its books and vouchers.

3. Where in such case, the sale took place on March 8, 1910, but the statement of the indebtedness of the company was not furnished to defendant until June 7, 1910, interest should have been computed on defendant's share of indebtedness, not from the date of sale, but from the date when the statement was furnished.

4. Where in such case, it appeared that the corporation had a claim for demurrage but that the corporation's agent had expressly agreed to save the party, against whom the demurrage was charged, from any claims for demurrage, it was not error to exclude such claim as an asset of the corporation.

5. Where in such case, defendant refused to pay any portion of the amount claimed, the court did not abuse its judicial discretion in imposing upon defendants the entire cost of the proceedings.

*Practice, Supreme Court—Appeals—Referees—Findings of fact.*
6. Findings of fact by a referee, confirmed by the court, will not be disturbed on appeal, where there is evidence to support them.

Argued March 31, 1915. Appeal, No. 480, Jan. T., 1914, by George R. Dilkes, from decree of C. P. No. 3, Philadelphia Co., June T., 1911, No. 3798, in equity, dismissing exceptions to report of referee, in case of Harvey C. Miller v. George R. Dilkes, Southern Steamship Company and The Land Title and Trust Company. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Modified and affirmed.

Bill in equity for an accounting.
Exceptions to report of Stevens Heckscher, Esq., referee.
The opinion of the Supreme Court states the facts.
The court dismissed exceptions to the referee's report and imposed the costs on George R. Dilkes. George R. Dilkes appealed.

*Error assigned* was the decree of the court.

*G. W. Pepper,* with him *James E. Hood* and *Biddle, Paul & Jayne,* for appellant.

*M. Hampton Todd,* for appellee.

OPINION BY MR. JUSTICE POTTER, October 4, 1915:
Under the terms of an article of agreement, dated February 7, 1910, Harvey C. Miller, the plaintiff in this case, purchased from George R. Dilkes, the defendant, all the outstanding capital stock of the Southern Steamship Company, with the exception of fifty shares, which plaintiff already owned. The value of the stock was, of course, affected by the indebtedness of the company. There was no difficulty in ascertaining the amount of the mortgage indebtedness. It was stipulated that the

stock should be delivered within one month, and that at the date of delivery, all fixed periodical payments, such as interest, taxes, etc., and all similar items accruing to the steamship company should be apportioned and credited between the buyer and seller; that the net indebtedness of the company, over and above the mortgages, should be then ascertained, giving the vendor credit for all valid and collectable notes, accounts and claims receivable held by the company on the date of said delivery. It was agreed that if the net indebtedness so ascertained was over $55,000, the defendant, George R. Dilkes, should pay the difference to the plaintiff, and that if such indebtedness was found to be less than $55,000, then the said Harvey C. Miller, the purchaser, should pay the said difference to the said George R. Dilkes. It was further agreed that $15,000 of the purchase-money should be deposited in the Land Title and Trust Company, in the joint names of the parties, to support the covenant of the said George R. Dilkes as to the excess indebtedness, which deposit was duly made. Settlement was made on March 8, 1910. On June 7, thereafter, plaintiff furnished to the vendor a statement, showing that the net indebtedness of the company on March 8, 1910, was $21,578.08 in excess of the amount stipulated, and payment of this excess amount was demanded. Defendant disputed the accuracy of the account, and refused to pay the sum demanded, and the parties being unable to agree upon any definite statement in respect to the matter, on July 27, 1911, the plaintiff filed this bill for an accounting and to secure payment of the balance found to be due him. After the case was at issue, it was sent by agreement to a referee, who stated an account, in which he found there was due by defendant, under the agreement, the sum of $23,-888.89, which he awarded to plaintiff, with interest thereon from March 8, 1910, to the date of filing his report, which amounted to $5,714.18. Exceptions were filed by both parties, whereupon the referee altered his

report somewhat, and awarded a sum total of $28,058.38. He also recommended that payment of the costs should be divided between the parties, three-fourths to be paid by defendant, and one-fourth by plaintiff. Exceptions to the referee's report were sustained in part by the court below, the total amount to be paid by defendant, being increased to $31,703.48, on which was to be credited the $15,000, with accrued interest thereon, which had been deposited with the Land Title and Trust Company. The court also directed that defendant should pay all the costs. From the final decree of the court below, the defendant has appealed.

The principal question raised by the assignments of error, and set forth in appellant's statement of questions involved, is whether the entries in the books of the steamship company were admissible in evidence, for the purpose of showing its indebtedness. The referee held that they were, and based his findings largely upon them. Questions as to the allowance of interest and the imposition of costs are also raised. The plaintiff relied almost entirely upon the books of the Southern Steamship Company to establish the amount of its indebtedness on March 8, 1910. While the referee and the court below based their conclusion in this respect upon somewhat different grounds, yet they agreed that the book entries constituted proper proof of the indebtedness of the company, at least to the extent of establishing a prima facie case. As defendant offered no evidence to rebut that of the book entries, the referee and the court below held that the amount of the indebtedness was to be regarded as established. This conclusion seems to be soundly buttressed by authority. The dispute in this case is not between strangers, but it is between persons both of whom were stockholders in the corporation, previous to the transaction which gave rise to the inquiry. In Com. v. Woelper, 3 S. & R. 29, Chief Justice Tilghman said (p. 32) : that the books of a corporation "are evidence in disputes between members of the cor-

poration; though not against strangers. The law is so laid down in Phillips on Evidence, 319, and I think correctly." In the text-book cited, 2 Phillips on Evidence (4th Am. Ed. 1859), 295, it is said: "Corporation books are evidence, by way of admission, between members of the corporation....... They cannot, in general, be adduced by a corporation, in support of its own rights or privileges, against strangers." And in a note to the above it is stated: "The general rule is that corporation books are evidence in disputes between members, but not against strangers." The rule that corporation books are evidence against members of the corporation has been steadily followed in our State: Deihl v. Adams County Mutual Ins. Co., 58 Pa. 443; New Era Life Assn. v. Rossiter, 132 Pa. 314, and Moore v. Rohrbacker, 30 Pa. Superior Ct. 568. In Montgomery v. Exchange Bk. of Waynesburg, 3 Sad. 461, it was held that (syllabus) "the books of a bank are admissible to charge a defendant who is a stockholder and officer of the bank, having in his power the inspection and supervision of such books." This court said in a per curiam opinion (p. 464): "The books of the bank were properly admitted to charge the defendant. He was not only a stockholder, but an officer of the corporation, having in his power the inspection and supervision of those books; hence, there is as much reason why he should be, prima facie, bound by the entries found in them, as that a partner should be bound by the books of his firm." It is suggested in the argument of counsel for appellant, that after March 8, 1910, when the stock of the Southern Steamship Company was transferred to Miller, and he became president, Dilkes was thereafter to be regarded as a stranger to the corporation, and should not be affected by the entries upon its books. But it must be remembered that the entries were of transactions which occurred before the transfer. They set forth payments of indebtedness incurred before that date. The inquiry was directed to the ascertainment of the condition of

the company when the transfer was made, and necessarily involved all indebtedness of, and all payments due the company at that time. Furthermore, it does not appear that Dilkes became a stranger to the company on March 8, 1910. On the contrary, on that day he became its vice-president and manager, and he continued to hold these offices until December 31, 1910. Up to June, 1910, the steamship company and Dilkes occupied the same office rooms. This covered the period during which the entries were made, from which the accountants calculated the net indebtedness. That period began with March 8, 1910, and ended in May. During all that time, defendant, as was said in Montgomery v. Exchange Bank of Waynesburg, supra, "was an officer of the corporation, having in his power the inspection and supervision of those books." It also appears from the testimony that the entries in the account were all based on vouchers and that many of these vouchers were approved by defendant himself. As to these, appellant's counsel concede that they were evidence against their client, being in the nature of admissions. The other items of the account were posted into the books from vouchers signed by other officers of the company whose authority to approve claims and sign vouchers for their payment is not questioned. Mr. Savage, who had been secretary and treasurer of the company since its organization, testified that he opened a ledger account entitled "Business prior to March 8, 1910," because he was instructed by both Mr. Dilkes and Mr. Miller to keep a separate account showing exactly what relation the transactions bore to the business prior to the date of sale, and to that which came afterwards. This account was "opened in view of the contract between Mr. Miller and Mr. Dilkes." It appears to have been in part, the basis of the accountants' calculation of the net indebtedness. We think the referee might have reached without any hesitation whatever the conclusion to which he came, that the book entries were admissi-

ble, for the purpose of showing indebtedness. The reasons which influenced him in reaching his conclusion, were indicated, as follows: (1) "the vouchers and entries were made in the regular course of business, and as part of the company's system of keeping its books; the work was done by officers and employees who had long been under defendant's employ, and the vouchers signed by two officers of the company usually other than the plaintiff himself and sometimes one of them defendant's son. If the company had a valid defense to any of these claims, (says the referee) would plaintiff be tempted to pay them and then run the risk of not being able to prove them against defendant, rather than interpose a valid defense in the first instance?" (2) While the plaintiff was under obligation to pay the undisputed unsecured indebtedness of the company within thirty days after settlement, yet the defendant appears at no time to have indicated to plaintiff, what if any of the claims he disputed. (3) The whole system of bookkeeping entries was inaugurated and followed by defendant while he was president of the company, and it bore the stamp of his approval.

We can find nothing in the record to justify the attitude assumed by defendant. Admittedly there was an indebtedness, considerable in amount. It was estimated at $55,000, and upon that amount as a basis the agreement for purchase and sale was made. If the actual indebtedness should prove to be more or less than the estimate, an adjustment was to be made accordingly. How could the amount of the indebtedness be ascertained, except by proceeding according to the usual course of business? Nothing occurred to interrupt the current of that business. It ran along in the usual channels. The capital stock of the company changed hands, but the business of the corporation ran on just the same, no matter who owned shares of stock. The accounts were kept by the corporation, as records for its own use, and it is difficult to conceive of any better

evidence of valid indebtedness than that furnished by the fact that bills were audited and paid by the officers of the company, whose business it was to do that very thing. If the defendant knew of any better way to ascertain the indebtedness, as a party interested, it was his place to suggest it. When the entries in question were made, he was not a stranger to the company or its affairs. He was an officer, and it appears from the testimony, that he instructed the secretary and treasurer to keep a separate account of settlements made of transactions which occurred prior to March 8, 1910; that he signed numerous vouchers for the payment of claims arising out of such transactions; that other vouchers were signed and claims approved in the usual course of business by other officers and the claims were entered in books to which plaintiff had access, and what is of greater significance than anything else is the fact that defendant has not disputed the correctness of any of these claims.

We are clear that the book entries were properly accepted as evidence to show prima facie indebtedness of the company, as of the date named, and in the absence of contradiction, the amount so shown must be regarded as having been fully established. Whatever amount was due to plaintiff, was, under the terms of the agreement, due and payable when the account showing the net indebtedness was presented by the purchaser to the vendor. This was upon June 7, 1910. Interest should, therefore, be computed from that date and not from March 8, 1910.

A claim on the books against the American Agricultural Chemical Company for demurrage, amounting to $1,210.75, was first disallowed as an asset, and afterwards was allowed by the referee, but was finally disallowed by the court. As Dilkes and company, who were at the time acting as agent for the steamship company, had expressly agreed to save the chemical company harmless from any claims for demurrage, it is apparent

that no such claim could be maintained, and that the referee in the first instance, and the court below, were right in excluding this item as an asset from the calculation.

There were other rulings on other claims, which were upon questions of fact, in which the findings of the referee were sustained by the court. In the absence of manifest error, which was not shown, these findings will not be disturbed.

We see no reason to differ with the court below as to the disposition it made of the costs. That was a matter within the sound discretion of the chancellor, with which this court will not interfere, in the absence of evidence of an abuse of discretion: Guckenheimer & Bros. Co. v. Kann, 243 Pa. 75. Defendant here refused to pay any portion of the amount claimed. Had he admitted liability to any extent and tendered payment of the amount admitted, the situation would have been different. Having resisted the entire claim, he cannot fairly complain that the costs were placed upon him.

The assignments of error are overruled; the decree of the court below is affirmed, with the exception that interest upon the amount recovered is to be allowed from June 7, 1910, instead of from March 8, 1910. This appeal is dismissed at the cost of appellant.